## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ALPHONSE A. DEMARIA, D.C., | : | |
| T. LEONARD PROBE, D.C., and JAMES | : | Case No. 2:11-cv-07298(WJM)(MF) |
| PROODIAN, D.C, on their own behalf and | : | |
| on behalf of all others similarly situated, | : | ***Filed Via ECF*** |
| | : | |
| *Plaintiffs,* | : | Filing Date: May 30, 2012 |
| | : | Motion Date: July 2, 2012 |
| - v. - | : | |
| | : | |
| HORIZON HEALTHCARE SERVICES, | : | |
| INC. d/b/a HORIZON BLUE CROSS | : | |
| BLUE SHIELD OF NEW JERSEY; and | : | |
| HORIZON HEALTHCARE OF NEW | : | |
| JERSEY, INC. d/b/a HORIZON HMO, | : | |
| | : | |
| *Defendants.* | : | |
| | : | |

## MEMORANDUM OF LAW IN OPPOSITION TO
## DEFENDANTS' MOTION TO DISMISS COMPLAINT (DKT. 11)

John W. Leardi
Vincent N. Buttaci
Paul D. Werner
BUTTACI & LEARDI, LLC
103 Carnegie Center, Suite 101
Princeton, New Jersey 08540
609-799-5150

James E. Cecchi
Lindsey H. Taylor
CARELLA, BYRNE, CECCHI,
  OLSTEIN, BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, New Jersey 07068
973-994-1700

D. Brian Hufford
Robert J. Axelrod
Susan J. Weiswasser
Anthony F. Maul
POMERANTZ HAUDEK
  GROSSMAN & GROSS LLP
100 Park Avenue
New York, NY 10017
212-661-1100

*Counsel to Plaintiffs and the Putative Classes*

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ...................................................................................... iii

PRELIMINARY STATEMENT ................................................................................. 1

SUMMARY OF FACTUAL ALLEGATIONS ......................................................... 2

LEGAL ARGUMENT ................................................................................................ 8

I.  THE *BURFORD* ABSTENTION DOCTRINE IS INAPPLICABLE HERE .................... 8

    A.  *Burford* Abstention is Only
       Applied in Exceptional Circumstances .................................................. 8

    B.  *Burford* Abstention Does Not
       Apply to Federal Question Jurisdiction .............................................. 10

    C.  *Burford* Abstention Only
       Applies to "Complex" State Law Questions ........................................ 12

    D.  The Plaintiffs' Individual Claims
       Were Not Adjudicated by DOBI ......................................................... 13

II.  PLAINTIFFS ADEQUATELY PLEAD
    DERIVATIVE STANDING UNDER §502(a) of ERISA ................................ 14

III.  PLAINTIFFS PROPERLY SEEK
     UNPAID BENEFITS UNDER § 502(a)(1)(B) of ERISA ................................ 20

IV.  PLAINTIFFS PROPERLY SEEK
     EQUITABLE RELIEF UNDER § 502(a)(3) of ERISA .................................. 22

V.  PLAINTIFFS ADEQUATELY PLEAD EXHAUSTION
    AND/OR FUTILITY OF ADMINISTRATIVE REMEDIES ......................... 25

VI.  PLAINTIFFS' STATE LAW CLAIMS
     ARE PLAUSIBLE UNDER *TWOMBLY* AND ITS PROGENY ...................... 27

    A.  Plaintiffs State Plausible
       Claims for Breach of Contract ............................................................ 28

    B.  Plaintiffs State Plausible
       Claims for Unjust Enrichment ............................................................ 29

    C.  Plaintiffs State Plausible
       Claims for Negligent Misrepresentation and Fraud ............................ 31

D.   Plaintiffs State Plausible
Claims for Promissory Estoppel ........................................................................... 33

E.   Plaintiffs State Plausible Claims for
Breach of the Implied Covenant of Good Faith and Fair Dealing ........................ 34

VII.   HORIZON IS A PROPER DEFENDANT FOR CLAIMS
RELATED TO THE SELF-FUNDED PLANS IT ADMINISTERS ............................... 35

VIII.   DR. PROODIAN'S CLAIMS WERE NEITHER RELEASED
NOR IMPLICATED BY HIS PRIOR SETTLEMENT WITH HORIZON ..................... 36

CONCLUSION ...................................................................................................................... 39

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Aetna Health Inc. v. Davila,*
542 U.S. 200 (2004) ................................................................................ 12, 36

*Aircraft Inventory Corp. v. Falcon Jet Corp.,*
18 F. Supp. 2d 409 (D.N.J. 1998) .................................................................. 34

*Allegheny County v. Frank Mashuda Co.,*
360 U.S. 185 (1959) ......................................................................................... 9

*Am. Disposal Servs., Inc. v. O'Brien,*
839 F.2d 84 (2d Cir. 1988) ............................................................................ 11

*Ankenbrandt v. Richards,*
504 U.S. 689 (1992) ......................................................................................... 9

*Applestein v. United Bd. & Carton Corp.,*
35 N.J. 343 (1961) ......................................................................................... 38

*Arcand v. Brother Int'l Corp.,*
673 F.Supp.2d 282 (D.N.J. 2009) ................................................................. 32

*Arlandson v. Hartz Mountain Corp.,*
792 F. Supp.2d 691 (D.N.J. 2011) ................................................................ 31

*Ashcroft v. Iqbal,*
129 S. Ct. 1937 (2009) .................................................................................. 27

*Ass'n of N.J. Chiropractors v. Aetna, Inc.,*
2012 U.S. Dist. LEXIS 64413 (D.N.J. May 8, 2012) .............................. 29, 30

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007) ................................................................... 17, 27, 28, 29

*Benefit Trust Life Insurance Co. v. Union National Bank of Pittsburgh,*
776 F.2d 1174 (3d Cir. 1985) ........................................................................ 31

*Berger v. Edgewater Steel Co.,*
911 F.2d 911 (3d Cir. 1990) .......................................................................... 26

*Bethphage Lutheran Serv., Inc. v. Weicker,*
965 F.2d 1239 (2d Cir. 1992) ........................................................................ 12

*Blatt v. Marshall & Lassman*,
    812 F.2d 810 (2d Cir. 1987)..................................................................... 35

*Boggs v. Boggs*,
    520 U.S. 833 (1997).............................................................................. 12

*Briglia v. Horizon Healthcare Servs.*,
    2005 U.S. Dist. LEXIS 18708 (D.N.J. May 13, 2005) .................................. 15

*Brown v. Cont'l Baking Co.*,
    891 F. Supp. 238 (E.D. Pa. 1995) .............................................................. 26

*Burford v. Sun Oil Co.*,
    319 U.S. 315 (1943).......................................................................... passim

*Chiropractic America v. LaVecchia*,
    180 F.3d 99 (3d Cir. 1999)........................................................................ 8

*CIGNA Corp. v. Amara*,
    131 S.Ct. 1866 (2011).............................................................................. 24

*City of N.Y. v. Milhelm Attea & Bros., Inc.*,
    550 F. Supp. 2d 332 (E.D.N.Y. 2008) ........................................................ 13

*Cmty. Med. Ctr. v. Local 464A UFCW Welfare Reimbursement Plan*,
    143 Fed. Appx. 433 (3d Cir. 2005) ............................................................ 15

*Coastal Group, Inc. v. Dryvit Systems, Inc.*,
    274 N.J. Super. 171 App. Div. 1994).......................................................... 33

*Cohen v. Independence Blue Cross*,
    820 F. Supp. 2d 594 (D.N.J. 2011) ...................................................... 35, 36

*Cohens v. V.A.*,
    19 U.S. 264 (1821)................................................................................... 9

*Colo. River Water Conservation Dist. v. U.S.*,
    424 U.S. 800 (1976)............................................................................ 9, 11

*Commerce Bancorp, Inc. v. BK Int'l Ins. Brokers, Ltd.*,
    490 F. Supp. 2d 556 (D.N.J. 2007) ............................................................ 33

*Connecticut State Dental Association v. Anthem Health Plans, Inc.*,
    591 F.3d 1337, 1353 (11th Cir. 2009) .................................................... 15, 17

*Cooper Hosp. Univ. Med. Ctr. v. Seafarers Health & Benefits Plan*,
    2007 U.S. Dist. LEXIS 71358 (D.N.J. Sept. 25, 2007) ................................. 15

*Corsini v. United Healthcare Corp.*,
    965 F. Supp. 265 (D.R.I. 1997)................................................................................ 27

*Crawford v. Roane*,
    53 F.3d 750 (6th Cir. 1995) ................................................................................... 16

*Crescent Park Tenants Ass'n v. Realty Equities Corp.*,
    58 N.J. 98 (1971) .................................................................................................... 13

*Crowell v. The Hosp. of St. Barnabas*,
    27 N.J. Eq. 650 (E. & A. 1876)............................................................................... 13

*Ctr. for Special Procedures v. Conn. Gen. Life Ins. Co.*,
    2010 U.S. Dist. LEXIS 128289 (D.N.J. Dec. 6, 2010)............................... 29, 34

*Daniels v. Thomas & Betts Corp.*,
    263 F.3d 66 (3d Cir. 2001)..................................................................................... 16

*Del Sontro v. Cendant Corp.*,
    223 F. Supp. 2d 563 (D.N.J. 2002) ...................................................................... 34

*DePina v. General Dynamics Corp.*,
    674 F. Supp. 46 (D. Mass. 1987) ......................................................................... 27

*Ditrolio v. Antiles*,
    142 N.J. 253 (1995) ................................................................................................ 38

*Dudley v. Nisource Corp. Servs., Co.*,
    2006 U.S. Dist. LEXIS 26395 (E.D. KY Apr. 18, 2006) ................................... 16

*Duquesne Light Co. v. Westinghouse Elec. Corp.*,
    66 F.3d 604 (3d Cir. 1995)..................................................................................... 32

*Firestone Tire & Rubber Co. v. Bruch*,
    489 U.S. 101 (1989)........................................................................................... 16, 36

*Fowler v. UPMC Shadyside*,
    578 F.3d 203 (3d Cir. 2009).................................................................................. 28

*Franco v. Conn. Gen. Life Ins. Co.*,
    818 F. Supp. 2d 792 (D.N.J. 2011) ...................................................................... 18

*Frederico v. Home Depot*,
    507 F.3d 188 (3d Cir. 2007)................................................................................... 28

*Fresenius Medical Care Holdings, Inc. v. Brooks Food Group, Inc.*,
    2007 U.S. Dist. LEXIS 63618 (W.D.N.C. Aug. 28, 2007).............................. 18

*Frishberg v. Deloitte & Touche Pension Plan*,
    2008 U.S. Dist. LEXIS 65343, (D. Conn. Aug. 26, 2008..............................................26

*Gingham v. Liberty Mut. Fire Ins. Co.*,
    2010 U.S. Dist. LEXIS 32234 (D.N.J. Mar. 26, 2010)....................................................35

*Gold Mills, Inc. v. Orbit Processing Corp.*,
    121 N.J. Super. 370 (L. Div. 1972)................................................................................13

*Goosby v. Osser*,
    409 U.S. 512 (1973)......................................................................................................19

*Gregory Surgical Services, LLC v. Horizon Blue Cross Blue Shield of New Jersey, Inc.*,
    2007 U.S. Dist. LEXIS 94056 (D.N.J. Dec. 26, 2007)..................................................18

*Griggs v. Bertram*,
    88 N.J. 347 (1982) ......................................................................................................34

*Grode v. Mut. Fire, Marine & Inland Ins. Co.*,
    8 F.3d 953, 958 (3d Cir. 1993)......................................................................................9

*Harbour Cove Marine Servs. v. Rabinowitz*,
    2005 U.S. Dist. LEXIS 36794 (D.N.J. 2005) ..................................................................37

*Harrow v. Prudential*,
    279 F.3d 244 (3d. Cir. 2002)..................................................................................25, 26

*Herman Hosp. v. MEBA Medical & Ben. Plan*,
    959 F.2d 569 (5th Cir. 1992) ......................................................................................18

*Hill v. Blue Cross & Blue Shield of Mich.*,
    409 F.3d 710 (6th Cir. 2005) ......................................................................................24

*Horizon Blue Cross Blue Shield of N.J. v. Transitions Recovery Program*,
    2011 U.S. Dist. LEXIS 62184 (D.N.J. June 10, 2011) ..................................................32

*Hughes v. Lipscher*,
    720 F. Supp. 454 (D.N.J. 1989) ..................................................................................10

*In re K-Dur Antitrust Litig.*,
    338 F. Supp. 2d 517 (D.N.J. 2004) ..............................................................................31

*In re Samsung DLP Television Class Action Litig.*,
    2009 U.S. Dist. LEXIS 100065 (D.N.J. Oct. 27, 2009)..................................................29

*In Record Head Inc. v. Olson*,
    476 F. Supp. 366 (D.N.D. 1979)..................................................................................10

*Ingersoll-Rand Co. v. McClendon*,
     498 U.S. 133 (1990) ...................................................................................... 12

*Israel v. N. New Jersey Teamsters Ben. Plan*,
     U.S. Dist. LEXIS 70991 (D.N.J. Sep. 29, 2006) ........................................... 15

*JFK Med. Ctr. v. Dialysis Clinic, Inc.*,
     U.S. Dist. LEXIS 112964 (D.N.J. Dec. 3, 2009) .......................................... 14

*Kaiser Steel Corp. v. W.S. Ranch Co.*,
     391 U.S. 593 (1968) ...................................................................................... 10

*Kennedy v. Connecticut Gen. Life Ins. Co.*,
     924 F.2d 698 (7th Cir. 1991) ......................................................................... 15

*Konover Constr. Corp. v. E. Coast Constr. Servs. Corp.*,
     420 F.Supp.2d 366 (D.N.J. 2006) .................................................................. 32

*Lo Bosco v. Kure Engineering Ltd.*,
     891 F. Supp. 1020 (D.N.J. 1995) ................................................................... 32

*Malaker Corp. Stockholders Protective Comm. v. First Jersey Nat'l Bank*,
     163 N.J. Super. 463 (App. Div. 1978) ........................................................... 34

*Malaker Corp. Stockholders Protective Comm. v. First Jersey Nat'l Bank*,
     163 N.J. Super. 463 (App. Div. 1978) ........................................................... 38

*Mass. Mut. Life Ins. Co. v. Russell*,
     473 U.S. 134 (1985) ...................................................................................... 12

*Medical Society of New Jersey v. Amerihealth HMO, Inc.*,
     376 N.J. Super. 48 (2005) ............................................................................. 13

*Mellon Bank, N.A. v. Aetna Business Credit, Inc.*,
     629 F.2d 1001 (3d Cir. 1980) ........................................................................ 37

*Mendez v. Avis Budget Group, Inc.*,
     2012 U.S. Dist. LEXIS 50775 (D.N.J. April 20, 2012) ................................. 30

*Mendez v. Avis Budget Group, Inc.*,
     2012 U.S. Dist. LEXIS 50775 (D.N.J. April 10, 2012) ................................. 30

*Mertens v. Hewitt Associates*,
     508 U.S. 248 (1993) ...................................................................................... 25

*Metz v. United Counties Bancorp.*,
     61 F. Supp. 2d 364 (D.N.J. 1999) ................................................................. 26

*Middle S. Energy, Inc. v. Ark. Pub. Serv. Comm'n*,
   772 F.2d 404 (8th Cir. 1985) ............................................................ 10

*MK Strategies, LLC v. Ann Taylor Stores Corp.*,
   567 F. Supp. 2d 729 (D.N.J. 2008) ................................................... 30

*North Jersey Ctr. for Surgery, P.A. v. Horizon Blue Cross Blue Shield of N.J., Inc.*,
   2008 U.S. Dist. LEXIS 71231 (D.N.J. Sept. 17, 2008) ................... 15

*Nat'l Alliance, LLC v. Blue Cross & Blue Shield of Georgia*,
   598 F.Supp.2d 1344 (N.D. Ga. 2009) ............................................... 17

*New Jersey Citizen Action v. Riviera Motel Corp.*,
   296 N.J. Super. 402 (App. Div 1997),
   *appeal dismissed*, 152 N.J. 361 (1998) ........................................... 14

*New Orleans Pub. Serv., Inc. v. Council of New Orleans*,
   491 U.S. 350 (1989) ..................................................................... 9, 11

*Newmark v. Gimbel's, Inc.*,
   54 N.J. 585 (1969) ........................................................................... 38

*North Jersey Ctr. for Surgery, PA v. Horizon Blue Cross Blue Shield of N.J.*,
   2008 U.S. Dist. LEXIS 71231 (D.N.J. Sept. 18, 2008) ................... 15

*O'Shea v. Amoco Oil Co.*,
   886 F.2d 584 (3d Cir.1989)............................................................... 38

*Pa. Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*,
   2010 U.S. Dist. LEXIS 49151 (N.D. Ill. May 17, 2010) .................. 23

*Paramount Aviation Corp. v. Augusta*,
   178 F.3d 132 (3d Cir. 1999)............................................................. 38

*Pascack Valley Hosp., Inc. v. Local 464A UFCW Welfare Reimbursement Plan*,
   388 F.3d 383 (3d Cir. 2004).............................................................. 14

*Patient Care Assocs., L.L.C. v. N.J. Carpenters Health Fund*,
   2012 U.S. Dist. LEXIS 52878 (D.N.J. Apr. 16, 2012) .................... 26

*Phillips v. County of Allegheny*,
   515 F.3d 224 (3d Cir. 2008).............................................................. 28

*Pilot Life v. Dedeaux*,
   481 U.S. 41 (1987)...................................................................... 11, 12

*Planned Parenthood v. Steinhaus*,
   60 F.3d 122 (2d Cir. 1995).............................................................. 12

*Porter v. Anthem Health Plans of Kentucky, Inc.*,
    2010 U.S. Dist. LEXIS 25791 (E.D. Ky. March 18, 2010) ............................................ 16

*Premier Health Ctr., P.C. v. UnitedHealth Group*,
    2012 U.S. Dist. LEXIS 44878 (D.N.J. Mar. 30, 2012) ................................................... 19

*Price v. N.J. Mfrs. Ins. Co.*,
    182 N.J. 519 (2005) ............................................................................................... 34

*Pub. Serv. Co. v. Patch*,
    167 F.3d 15 (1st Cir. 1998) ...................................................................................... 11

*R.R. Comm'n of Tex. v. Pullman Co.*,
    312 U.S. 496 (1941) ................................................................................................. 9

*Republic Industries, Inc. v. Central Pennsylvania Teamsters Pension Fund*,
    693 F.2d 290 (3rd Cir. 1982) ................................................................................... 27

*Rosado v. Instituto Medico Del Norte*,
    145 F. Supp. 2d 164 (D.P.R. 2001) ............................................................................ 9

*Sears Mortgage Corp. v. Rose*,
    134 N.J. 326 (1993) ............................................................................................... 34

*Seidenberg v. Summit Bank*,
    348 N.J. Super. 243 (App. Div. 2002) ....................................................................... 34

*Sereboff v. Mid Atlantic Med. Services*,
    547 U.S. 356 (2006) ............................................................................................... 36

*Siegel v. LePore*,
    234 F.3d 1163 (11th Cir. 2000) ............................................................................... 11

*Simonson v. Hertz Corp.*,
    2011 U.S. Dist. LEXIS 32755 (D.N.J. March 28, 2011) ................................................ 30

*Simonson v. Hertz*,
    2011 U.S. Dist. LEXIS 32755 (D.N.J. March 28, 2011) ................................................ 30

*Sladek v. Bell Sys. Mgmt. Pension Plan*,
    880 F.2d 972 (7th Cir. 1989) ................................................................................... 16

*Snyder v. Farnam*,
    792 F. Supp.2d 712 (D.N.J. 2011) ............................................................................ 31

*Spectrum v. Valley Truck Parts*,
    2008 U.S. Dist. LEXIS 102040 (W.D. Mich. Dec. 17, 2008) ......................................... 16

*Sportscare of Am., P.C. v. Multiplan, Inc.*,
    2011 U.S. Dist. LEXIS 6295 (D.N.J. Jan. 24, 2011) ................................ 14, 19

*Tackett v. M&G Polymers, USA, LLC*,
    561 F.3d 478 (6th Cir. 2009) ....................................................... 24

*Tango Transp. Healthcare Fin. Servs.*,
    322 F.3d 888 (5th Cir. 2003) ....................................................... 14

*Tedesco Mfg. Co. v. Honeywell, Int'l, Inc.*,
    127 Fed. Appx. 50 (3d Cir. 2005). ................................................. 37

*Torres-Hernandez v. CVT Prepaid Solutions, Inc.*,
    2008 U.S. Dist. LEXIS 105413 (D.N.J. Dec.17, 2008) ................................ 30

*Triffin v. Automatic Data Processing, Inc.*,
    394 N.J. Super. 237 (App. Div. 2007) ............................................. 32

*Vacca v. Stika*,
    21 N.J. 471 (1956) ................................................................ 38

*Varity Corp. v. Howe*,
    516 U.S. 489 (1996) ............................................................... 36

*Video Pipeline, Inc. v. Buena Vista Home Entertainment*, Inc.,
    210 F. Supp. 2d 552 (D.N.J. 2002) ................................................ 28

*Watts v. Florida International University*,
    495 F.3d 1289 (11th Cir. 2007) ................................................... 17

*Wayne Surgical Center, LLC v. Concentra Preferred Systems, Inc.*,
    2007 U.S. Dist. LEXIS 61137 (D.N.J. Aug. 20, 2007) ............................. 14, 15

*Wells Fargo Bank Northwest, N.A. v. American General Life Ins. Co.*,
    2011 U.S. Dist. LEXIS 53885 (D.N.J. May 19, 2011) ................................ 30

*White Consol. Industries, Inc. v. Lin*,
    372 N.J. Super. 480 (App. Div. 2004) ............................................. 36

*Wilson v. Amerada Hess Corp.*,
    168 N.J. 236 (2001) ............................................................... 35

*Wolf v. National Shopmen Pen. Fund*,
    728 F.2d 182 (3d Cir. 1984) ...................................................... 25

*Zahl v. Cigna Corp.*,
    2010 U.S. Dist. LEXIS 32268 (D.N.J. Mar. 31, 2010) ............................... 14

**Statutes**

28 U.S.C. § 1331 (2006) .................................................................................................... 8

29 U.S.C. § 1001(b) ......................................................................................................... 11

29 U.S.C. § 1002(21)(a) ................................................................................................... 35

29 U.S.C. § 1132(a) ........................................................................................... 14, 22, 23, 24

N.J.S.A. 17B:26-9.1 ........................................................................................................... 3

N.J.S.A. 17B:27-51.1 ......................................................................................................... 6

N.J.S.A. 17B:30-13.1 ......................................................................................................... 7

**Regulations**

29 C.F.R. § 2560.503-1(g) ............................................................................................... 22

29 C.F.R. § 2560.503-1(h) ............................................................................................... 23

29 C.F.R. § 2560.503-1(m)(4) .......................................................................................... 20

**Rules**

Fed. R. Civ. P. 8 ......................................................................................................... 27, 30

Plaintiffs Alphonse A. DeMaria, D.C. ("DeMaria"), T. Leonard Probe, D.C. ("Probe"), and James Proodian, D.C. ("Proodian") (collectively, "Plaintiffs"), hereby submit this Memorandum of Law in Opposition to the Motion to Dismiss (Dkt. 11) filed by Defendants Horizon Healthcare Services, Inc. d/b/a Horizon Blue Cross Blue Shield of New Jersey, and Horizon Healthcare of New Jersey, Inc. d/b/a Horizon HMO ("Horizon").

## PRELIMINARY STATEMENT

For years, Horizon fleeced the entire chiropractic profession in New Jersey by applying an illegal –albeit inventive – claims adjudication policy that denied separate reimbursement for examinations and adjective treatment modalities across the board. The New Jersey Department of Banking and Insurance ("DOBI") determined that this reimbursement policy was not only inconsistent with the terms and conditions of the various plans of insurance administered by Horizon, but also violated the New Jersey Unfair Claim Settlement Practices Act. And now Horizon would have this Court believe that a mere cease and desist order issued by DOBI is enough to rectify the harm it visited upon thousands of chiropractors in this state.

Even more incredible, though, is Horizon's misguided attempt to turn literally *all* federal ERISA jurisprudence on its head by arguing the primacy of state insurance law in resolving coverage disputes involving employer-sponsored health plans – as if this is the first instance where an insurance company's misconduct has concurrently violated both state and federal law. To say nothing of how egregiously Horizon mischaracterizes the scope and breadth of the *Burford* abstention doctrine it purports to invoke, casually gleaning over such trivial points as the inapplicability of *Burford* to federal question jurisdiction, and that the complex state issue Horizon would have this Court abstain from considering was already resolved.

Upon moving on to the substance of Plaintiffs' claims, Horizon throws the proverbial

1

wad of spaghetti at the wall, advancing, among other things: (1) a narrow theory of derivative standing under ERISA that has been universally rejected by all but a handful of courts facing inapposite factual circumstances; (2) a flawed understanding of the scope equitable remedies available under 502(a)(3) of ERISA, which was clarified by the Supreme Court just last year; and (3) a complete denial of any fiduciary liability over the self-funded plans it administers, relying on an unwritten, unpublished, five-year trial court order from Morris County New Jersey, as opposed to the scores of recent reported decisions addressing the very same issue.

But perhaps the most ridiculous of all of Horizon's arguments is its assertion that Plaintiff's allegations are not particularized enough to put it on notice of the claims brought against it and the grounds upon which those claims rest. This despite the prior administrative proceeding before DOBI, which was zealously defended by Horizon over the course of several years. Surely, even the most casual observer would scoff at Horizon's attempt to feign ignorance of what exactly it is accused of having done wrong in this lawsuit.

Horizon is correct on one essential point, however. The essence of Plaintiffs' Complaint ("Cpt.") is that DOBI did not go far enough in simply ordering Horizon to, at long last, stop breaking the law. And it is now, in fact, up to this Court to finish the job.

## SUMMARY OF FACTUAL ALLEGATIONS

In this action against Horizon, Plaintiffs seek to represent themselves and all other similarly-situated chiropractic physicians affected by Horizon's improper conduct in processing insurance claims for chiropractic services as alleged herein (the "Putative Class"). Plaintiffs bring claims under the Employment Retirement Security Income Act of 1974 ("ERISA") on behalf of and as assignees of their patients, as well as claims for breach of contract, promissory estoppel, breach of the implied covenant of good faith and fair dealing, unjust enrichment,

common-law fraud, and negligent misrepresentation. Cpt. at ¶¶ 2, 106-168.[1]

Horizon is in the business of underwriting and/or administering various forms of insurance, including individual, employer-sponsored, and governmental health insurance coverage ("Plan" or "Plans"). Through these Plans, Horizon reimburses their Plan insureds ("Horizon Insureds") for certain health care expenses ("Covered Services"), subject to the terms, conditions, and benefit limitations set forth under its various Plans. Cpt. at ¶¶ 3, 17-19. Horizon underwrites and/or administers the health insurance benefits of more than 3.6 million Insureds in the State of New Jersey. Horizon's Plans include, but are not limited to: Point of Service Plans; Preferred Provider Organization Plans; Direct Access or Open Access Plans; Medical Savings Account Plans; traditional indemnity plans; NJ PLUS; the Federal Employees Service Benefit Plan; and Health Maintenance Organization Plans. Cpt. ¶¶ 4, 17-19.

The majority of the Horizon Insureds are covered by Plans offered, underwritten, or administered by Horizon as part of a private employee welfare benefit plan governed by ERISA. ERISA governs all such private employee welfare benefit plans, whether they are fully-insured or self-funded, and includes more than 170 million insureds nationwide. Cpt. ¶ 5. Many Horizon Insureds are also covered by ERISA-exempt Plans, which are issued by governmental agencies or churches, or for Plans acquired by individuals, and not acquired through a private employer. For example, through NJ PLUS, Horizon administers the State Health Benefits Program (the "SHBP"), which provides health benefits to State of New Jersey employees, and makes payments on insurance claims on behalf of the SHBP. Cpt. ¶ 6. Similarly, through the Federal Employees Service Benefit Plan, Horizon administers the Federal Employees Health Benefits Program (the "FEP"), which provides health benefits to Federal employees, and makes payments

---

[1] Plaintiffs have elected to voluntarily withdraw their causes of action for "Bad Faith" and under New Jersey's Prompt Pay Statute, N.J.S.A. 17B:26-9.1, and anticipates filing a joint stipulation to that effect shortly.

on insurance claims on behalf of the FEP. *Id.*

Horizon provides its Insureds with access to Covered Services by utilizing, primarily but not always exclusively, a network of health care providers who have contractually-agreed to participate in the Horizon's Plans and thus render care on a fixed-fee basis. Cpt. ¶ 7. The health care providers who enter into these participation contracts ("Provider Agreements") with Horizon are referred to as "Participating Providers." *Id.* Participating Providers include, but are not limited to, primary care physicians, general practitioners, pediatricians, surgeons, specialists, osteopaths, chiropractic physicians, physical therapists, and hospitals. *Id.* The Provider Agreements between Horizon and Participating Providers require the providers to accept agreed-upon payments for Covered Services as payment in full, thus relieving Covered Members of any financial burden in excess of a co-payment or deductible, if any, set forth in their individual or group Plans and, in turn, requires Horizon to pay each Participating Provider directly. *Id.*

Many Horizon Plans also provide for so-called "out-of-network" benefits, whereby its Insureds are entitled to insurance benefits for services rendered by health care providers that have not entered into Participating Provider Agreements with Horizon. Cpt. ¶ 8. These "Non-Participating Providers" have not agreed to accept Horizon's contractual fee schedule when providing Covered Services to Horizon Insureds. Instead, Non-Participating Providers are entitled to be reimbursed at usual and customary rates ("UCR"). *Id.* Moreover, Non-Participating Providers have not waived the right to "balance bill" Horizon's Insureds for the difference, if any, between their submitted charges and the UCR rate ultimately paid by Horizon. *Id.*

At all relevant times, Plaintiffs and other members of the Putative Class were licensed chiropractic physicians who regularly provided chiropractic treatment to Horizon's Insureds. At all relevant times: Plaintiff DeMaria was a Participating Provider with Horizon; Plaintiff

Proodian was a Non-Participating Provider with Horizon; and Plaintiff Probe was a Participating Provider with Horizon who terminated his Provider Agreement with Horizon, at least in part due to the impermissible conduct alleged herein, and thereafter provided services to Horizon's Insureds as a Non-Participating Provider. As a matter of course, Plaintiffs and other members of the Putative Class obtained written assignments from their patients, including Horizon Insureds, which assign any claims for benefits otherwise payable under the health insurance Plans governing the patients' health care services to Plaintiffs. Further, these forms confirm the patients' understanding that they remain liable and may be billed for non-Covered Services under their health care Plans. Pursuant to these assignments, Plaintiffs have standing to pursue these claims for benefits under ERISA on behalf of their patients. Cpt. ¶¶ 9, 19-21, 60.

At all relevant times, Plaintiffs and other members of the Putative Class regularly submitted claims for reimbursement to Horizon with respect to Covered Services they provided to Horizon Insureds, and Horizon reimbursed Plaintiffs and other members of the Putative Class either in accordance with the fee schedules set forth in their Participating Provider Agreements or based upon UCR, after first determining that the services in question were, in fact, Covered Services under the applicable Plan or Plans. Cpt. at ¶¶ 9, 19-21, 83-96.

As further detailed herein, the chiropractic treatments regularly provided to Horizon Insureds by Plaintiffs and other Class Members consisted primarily of four (4) types of services: (1) evaluation and management services ("E/M"); (2) chiropractic manipulative therapy ("CMT"); (3) passive adjunctive modalities ("passive modalities"); and (4) active therapeutic procedures ("active therapies"). At all relevant times, these services were all Covered Services under the terms and conditions of Horizon Plans and were separate and distinct from each other; in fact, each of these services is separately reportable for reimbursement purposes pursuant to the

5

American Medical Association's Current Procedural Terminology ("CPT"), the exclusive coding language used by all licensed health care providers in submitting health insurance benefit claims to third party payers, including insurers like Horizon. Plaintiffs and other Class Members, therefore, submitted separate reimbursement claims for these services. Cpt. at ¶¶ 11, 25-55.

At all relevant times, rather than paying for each separate and distinct service rendered and subsequently reported to it utilizing the applicable CPT code, Horizon improperly and systemically denied all insurance benefit claims for E/M services, passive modalities, and active therapies, and only provided benefits for the CMT services. These denials were not based upon any individual review of the propriety of the services in question or the manner in which they were reported on the standard insurance claim form. Instead, Horizon maintained an internal claims adjudication policy whereby all claims for services submitted by chiropractic physicians other than those for CMT were denied. The denial codes set forth on explanation of benefit ("EOB") statements sent to the affected providers and their patients expressly indicated that the services in question were not Covered Services when billed by a chiropractic physician. Nevertheless, no such benefit limitation existed in any of Horizon's Plans, nor would any such limitation be legal for Plans subject to New Jersey law. *See* N.J.S.A. 17B:27-51.1. *Id.*

In or about March 2004, the American Chiropractic Association (the "ACA") filed a complaint with the New Jersey Department of Banking and Insurance ("DOBI"), asserting that Horizon's chiropractic reimbursement policies, including its non-payment of all non-CMT services, violated of New Jersey law. Thereafter, the ACA was joined by the Association of New Jersey Chiropractors (the "ANJC") in pursuing its claims. Cpt. ¶ 13.

In response to the allegations relating to non-payment of non-CMT services, Horizon did not dispute that its practices were systemic in nature and expressly conceded that it, in fact, never

provided separate reimbursement to chiropractic physicians for non-CMT services. Instead, Horizon contended that it incorporated its payment for such services into a "global fee" for CMT. This practice is known as "bundling." Nevertheless, this bundling theory was neither reflected on EOB statements prior to its being asserted by Horizon before DOBI, nor was it contained or referenced in either Horizon's fee schedules for Participating Providers or the benefit descriptions and/or limitations set forth in Horizon's Plans. Moreover, this so-called global fee was further impermissible for two additional reasons. First, Horizon's bundling theory for all services performed by a licensed chiropractic physician represented an arbitrary and capricious application of the HIPAA-*mandated* Transaction and Code Set regulations. Second, because E/M services, passive modalities, and active therapies each have their own "relative value," this global fee theory was directly undermined by Horizon's purported reliance on the Resource Based Relative Value System ("RBRVS") rate-setting methodology. Cpt. ¶¶ 14, 79-82.

In a Decision and Order dated October 7, 2009, DOBI held that Horizon's bundling practices violated New Jersey's Unfair Claim Settlement Practices Act, N.J.S.A. 17B:30-13.1, and ordered Horizon to cease and desist its practice of "failing to individually evaluate whether E/M [services, passive modalities, and active therapies] billed by chiropractors are significantly separable from CMT or other services provided by chiropractors." In doing so, DOBI concluded that in the absence of specific contractual provisions that comply with applicable law, Horizon's policy of denying all benefit claims for non-CMT services performed by chiropractic physicians "across-the-board" was legally impermissible. Cpt. ¶¶ 79-82.

DOBI's enforcement order was limited, however, to claims submitted on a go-forward basis as it merely ordered Horizon to cease and desist violating the law, as opposed to addressing historic violations. *Id.* And despite numerous delays in altering its claims processing policies and

procedures as it related to chiropractic claims, Horizon's bundling of non-CMT services in CMT claims appears to have been rectified as of April 15, 2010. Horizon has not, however, addressed its historical violations of the law. By and through this action, Plaintiffs, on behalf of themselves and all other chiropractors who were subjected to these improper and illegal claim denials, seek relief for Horizon's past misconduct in perpetrating its unlawful bundling scheme.

## LEGAL ARGUMENT

I.   **THE *BURFORD* ABSTENTION
     DOCTRINE IS INAPPLICABLE HERE**

In its brief, Horizon first urges the Court to refrain from exercising jurisdiction over Plaintiffs' claims, arguing that the Abstention Doctrine, first articulated by the Supreme Court in *Burford v. Sun Oil Co.*, 319 U.S. 315, 318 (1943), is "plainly appropriate here." Db9. In doing so, Horizon principally relies upon the Third Circuit's decision in *Chiropractic America v. LaVecchia*, 180 F.3d 99 (3d Cir. 1999), wherein a constitutional challenge to New Jersey state insurance laws brought by a group of chiropractors was dismissed pursuant to *Burford*. Horizon also alludes to the importance of preserving state autonomy over insurance regulation, ostensibly positing that its bundling practices are exclusively a state law concern left to DOBI. Horizon conveniently omits, however, any explanation of the scope, breadth, and purpose of the *Burford* doctrine, particularly in the context of federal statutory claims.

A.   ***Burford* Abstention is Only
     Applied in Exceptional Circumstances**

Any analysis of the applicability of the *Burford* doctrine begins with the premise that courts should only abstain from exercising federal jurisdiction in exceptional circumstances. Congress mandated that "the district courts shall have original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States," pursuant to its authority under Article III of the Constitution. 28 U.S.C. § 1331 (2006). And because a district court's

8

jurisdiction is already limited, there are very few circumstances in which a federal court will abstain from exercising its congressionally-mandated jurisdiction. *Grode v. Mut. Fire, Marine & Inland Ins. Co.*, 8 F.3d 953, 958 (3d Cir. 1993). Indeed, the federal abstention doctrine only allows a court to refrain from hearing a matter in order to respect "the rightful independence of the state governments." *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 501 (1941).

So "abstention is the exception, not the rule." *Colo. River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 813 (1976). "The doctrine of abstention . . . is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. . . ." *Allegheny County v. Frank Mashuda Co.*, 360 U.S. 185, 188 (1959); *see also Cohens v. V.A.*, 19 U.S. 264, 404 (1821) ("We cannot pass [a measure] by because it is doubtful. With whatever doubts, with whatever difficulties, a case may be attended, we must decide it, if it be brought before us."); *Colo. River*, 424 U.S. at 817 (noting that "[t]he federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them"). Accordingly, abstention should be utilized very infrequently. *Ankenbrandt v. Richards*, 504 U.S. 689, 704 (1992) (quoting *Rosado v. Instituto Medico Del Norte*, 145 F. Supp. 2d 164, 169 (D.P.R. 2001)).

*Burford* was filed in federal court based upon diversity of citizenship – as opposed to a federal question – and involved a due process challenge to the application of a "complex state regulatory scheme." 319 U.S. at 335 (Douglas, J., concurring). Specifically, the plaintiff alleged a procedural due process violation when the Texas Railroad Commission allowed Burford, a small company, to drill on a specific parcel of land. *Id.* at 316-17. But the Court determined that due process challenge was of only "minimal federal importance" because it focused on whether state conservation regulations were followed. *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 360 (1989); s*ee also Burford*, 319 U.S. at 332 (stating that the due

process claim was not one of constitutional validity, "but for compliance with a standard of 'reasonableness' under the state statute which, it is said, is different from the constitutional standard of due process."). The Court thus abstained from exercising jurisdiction, reasoning that state courts had much greater expertise and knowledge regarding the substance of the dispute because there was an established system of "judicial supervision" of the regulations in question resulting in "specialized knowledge" of the applicable scheme. *Burford*, 319 U.S. at 317-19.

   B.   ***Burford* Abstention Does Not
        Apply to Federal Question Jurisdiction**

   In subsequent abstention cases, however, courts have explicitly refused to apply the *Burford* doctrine when there is a federal question or federal law in issue because "[t]he very premise of [the *Burford* abstention doctrine] is lacking when, as here, a federal law or the Constitution brings the proceeding or regulation at issue beyond the state's authority." *Middle S. Energy, Inc. v. Ark. Pub. Serv. Comm'n*, 772 F.2d 404, 417 (8th Cir. 1985) (finding that preemption and the commerce clause are matters of federal law). The existence of a federal question invalidates the need to adhere to any state regulatory scheme and becomes one of "basic federal supremacy." *Id*; *see also Kaiser Steel Corp. v. W.S. Ranch Co.*, 391 U.S. 593, 594 (1968)(mandating federal court jurisdiction because the issue centered around a state constitution provision concerning water rights); *Hughes v. Lipscher*, 720 F. Supp. 454, 458 (D.N.J. 1989) (explaining that *Burford* abstention is not applicable when plaintiff asserts a Fourteenth Amendment right to equal protection and privacy regarding family association and marriage); *In Record Head Inc. v. Olson*, 476 F. Supp. 366, 371 (D.N.D. 1979) (abstention was inappropriate where the validity of a state criminal statute was challenged under the Constitution).

   In fact, the *Burford* doctrine has **never** been applied to a non-diversity case involving federal question jurisdiction; and this Court should also decline expanding the *Burford* doctrine

here because there is no difficult state law in issue. The underlying purpose of invoking the *Burford* doctrine is "to avoid resolving difficult state law issues involving important public policies or avoid interfering with state efforts to maintain a coherent policy in an area of comprehensive regulation or administration." *Am. Disposal Servs., Inc. v. O'Brien*, 839 F.2d 84, 87 (2d Cir. 1988). But the *Burford* doctrine is so limited in its application that it stops short of mandating abstention even when there is an existing regulatory scheme, or where there may be a "potential conflict" with a state law or regulation. *New Orleans Pub. Serv.*, 491 U.S. at 362; *Colo. River*, 424 U.S. at 815-16. Instead, abstention under the *Burford* doctrine is only applicable when necessary to "protect complex state administrative processes from undue federal interference." *Siegel v. LePore*, 234 F.3d 1163, 1173 (11th Cir. 2000) (finding that the claims only pertained to "certain discrete practices set forth in a particular state statute").

So the presence of concurrent federal issues that do not touch upon state law or policy obviates the need for abstention entirely. *Pub. Serv. Co. v. Patch*, 167 F.3d 15, 24 (1st Cir. 1998) (noting that even in those instances where federal action "may impair or even entirely enjoin the operation of a state scheme," abstention is inappropriate if there are "predominating" federal issues). As to the Plaintiffs federal statutory claims, Congress enacted ERISA to "protect . . . the interests of participants in employee benefit plans and their beneficiaries" by, in relevant part, providing for "appropriate remedies, sanctions, and ***ready access to the Federal Courts***." 29 U.S.C. § 1001(b) (emphasis added). To that end, "the detailed provisions of § 502(a) set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans." *Pilot Life v. Dedeaux*, 481 U.S. 41, 54 (1987). The end result is a "comprehensive legislative scheme" that includes an "integrated system of procedures

for enforcement." *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 147 (1985). And "any state law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Aetna Health Inc. v. Davila,* 542 U.S. 200, 209 (2004) (citing *Pilot Life*, 481 U.S. at 54-56); *see also Boggs v. Boggs*, 520 U.S. 833, 841 (1997) (holding that a state law is preempted if it frustrates the underlying objectives of ERISA); *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 143-145 (1990) ("Congress intended § 502(a) to be the exclusive remedy for rights guaranteed under ERISA"). But this Court need not address any potential conflicts between New Jersey law and ERISA for purposes of the present motion. Instead, it should simply recognize that the "reverse preemption" argument proffered by Horizon is imaginative, at best. Scores of Supreme Court cases make it clear that New Jersey law cannot displace any portion of ERISA's civil enforcement scheme. If anything, the opposite scenario is far more likely.

      **C.**    ***Burford* Abstention Only Applies to "Complex" State Law Questions**

      But even if a New Jersey's regulatory scheme is concurrently implicated, the inquiry does not end there – the state regulatory scheme must involve a requisite degree of complexity to satisfy *Burford. Bethphage Lutheran Serv., Inc. v. Weicker*, 965 F.2d 1239, 1243 (2d Cir. 1992). Abstention is not warranted if the rules and regulations of the state scheme are not complex or difficult to apply. *Planned Parenthood v. Steinhaus*, 60 F.3d 122, 127 (2d Cir. 1995) ("The straightforward statute and regulations invoked here have the comparatively modest goals of ensuring against waste, and requiring districts to prepare plans guiding the provision of social services. If these statutes indeed amount to a "scheme" as envisioned under *Burford*, it does not rise to the requisite degree of complexity."); *City of N.Y. v. Milhelm Attea & Bros., Inc.*, 550 F.

Supp. 2d 332, 343 (E.D.N.Y. 2008) (declining to abstain because the applicable state tax law did not amount to a regulatory scheme that would warrant abstention). Here, there simply is no complex state law issue before the Court; if anything, any New Jersey's interest in regulating Horizon's illegal bundling scheme – be it complex or not – has already been adjudicated.

### D. The Plaintiffs' Individual Claims Were Not Adjudicated by DOBI

But no error is more glaring than Horizon's brazen attempt to casually glean over the fact that the Plaintiffs were not parties to the uncontested matter previously adjudicated before DOBI. Yes, the Plaintiffs are or have each been members of the ANJC; but that in and of itself does not indicate that their *individual* claims against Horizon in this case were competently asserted by the ACA or the ANJC before DOBI. In fact, New Jersey law precludes it.

A professional association lacks standing to assert claims for breach of contract and breach of the implied duty of good faith and fair dealing on behalf of its members. *Medical Society of New Jersey v. Amerihealth HMO, Inc.*, 376 N.J. Super. 48, 61 (2005). Those claims are personal to the Plaintiffs, who either directly hold or have been assigned the claims here in issue; neither the ACA nor the ANJC has any cognizable interest in those individual rights; and the Plaintiffs have not assigned their individual claims to either the ACA or the ANJC. *Id.* Thus, both the ACA and the ANJC lacked either representational or institutional standing to litigate those claims on the Plaintiffs' behalf, either in court or before DOBI. *Id.* (citing *Gold Mills, Inc. v. Orbit Processing Corp.*, 121 N.J. Super. 370, 373 (L. Div. 1972); *Crowell v. The Hosp. of St. Barnabas*, 27 N.J. Eq. 650, 653 (E. & A. 1876)). "Such litigation would necessary require the participation, *as indispensible parties*, of the individual doctors [or patients] whose contractual rights would be at stake." Id. (emphasis added)(citing *Crescent Park Tenants Ass'n v. Realty Equities Corp.*, 58 N.J. 98, 109 (1971); *New Jersey Citizen Action v. Riviera Motel Corp.*, 296

N.J. Super. 402, 413 (App. Div 1997), *appeal dismissed*, 152 N.J. 361 (1998)). So while the DOBI action may have raised – and perhaps even resolved – many *similar* issues, the Plaintiffs' individual claims against Horizon were not adjudicated before DOBI. And the viability of those claims is not diluted simply because two professional associations successfully sought relief from DOBI relative to the same bundling scheme.

## II.   PLAINTIFFS ADEQUATELY PLEAD DERIVATIVE STANDING UNDER §502(a) of ERISA

A health care provider who asserts claims pursuant to an assignment of benefits received from a subscriber to an ERISA insured plan – as the Plaintiffs have here – has standing to pursue ERISA claims for benefits. *See Wayne Surgical Center, LLC v. Concentra Preferred Systems, Inc.*, 2007 U.S. Dist. LEXIS 61137, *9-10 (D.N.J. Aug. 20, 2007) (provider "has standing as an assignee to bring a claim against [defendant] under Section 502(a) of ERISA"). This Court in *Sportscare of Am., P.C. v. Multiplan, Inc*., 2011 U.S. Dist. LEXIS 6295 (D.N.J. Jan. 24, 2011), clearly and comprehensively summarized the Third Circuit law in this regard:

> Section 502(a) of ERISA provides that "a participant or beneficiary" may bring a civil action "to recover benefits due to him under the terms of his plan, [or] to enforce his rights under the terms of the plan . . . . " 29 U.S.C. § 1132(a). However, in addition to "participant[s]" and "beneficiar[ies]," it has been widely held that a health care provider may sue under ERISA § 502(a) if there is a valid assignment to the provider by a plan participant or beneficiary. At least seven Courts of Appeals have so held. *See, e.g.,* [*Pascack Valley Hosp., Inc. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 383, 401 n.7 (3d Cir. 2004)] ("Almost every circuit to have considered the question has held that a health care provider can assert a claim under § 502(a) where a beneficiary or participant has assigned to the provider that individual's rights to benefits under the plan" (citing *Tango Transp. Healthcare Fin. Servs.*, 322 F.3d 888, 891 (5th Cir. 2003) (citing various circuit courts of appeals so holding)). Federal jurisdiction based on assignment of ERISA claims has been adopted in this district. See, e.g., *Zahl v. Cigna Corp.*, No. 09-1527, 2010 U.S. Dist. LEXIS 32268, 2010 WL 1372318, at *2 (D.N.J. Mar. 31, 2010) ("It is settled in this District that Zahl, as an assignee of these rights, stands in the shoes of his patients and may sue on their behalf to collect unpaid benefits."); *JFK Med. Ctr. v. Dialysis Clinic, Inc.*, No. 09-4208, 2009 U.S. Dist. LEXIS 112964, 2009 WL 4573741, at *3 n.2 (D.N.J. Dec. 3, 2009); *North Jersey Ctr. for Surgery, PA v. Horizon Blue Cross Blue Shield of*

*N.J.*, No. 07-4812, 2008 U.S. Dist. LEXIS 71231, 2008 WL 4371754 (D.N.J. Sept. 18, 2008); *Wayne Surgical Ctr., LLC v. Concentra Preferred Sys., Inc.*, No. 06-298, 2007 U.S. Dist. LEXIS 61137, 2007 WL 24166428, at *4 (D.N.J. Aug. 20, 2007); *Israel v. N. New Jersey Teamsters Ben. Plan*, No. 03-2922, 2006 U.S. Dist. LEXIS 70991, 2006 WL 2830973, at *5 (D.N.J. Sep. 29, 2006). Therefore, standing to sue under ERISA § 502(a) exists for participants and beneficiaries in ERISA plans and for providers suing pursuant to appropriate assignments.

*Id.* at *6-8. Yet Horizon infers that the ability of healthcare providers to establish derivative standing to sue under § 502(a) of ERISA through written assignment of benefits forms executed by their patients is both a complex and highly technical exercise. Db14-18.[2]

Nevertheless, satisfying the assignment requirement for purposes of defeating a motion to dismiss is, in fact, easy to meet. As Judge Easterbrook stated in *Kennedy v. Connecticut Gen. Life Ins. Co.*, 924 F.2d 698 (7th Cir. 1991), a provider (a chiropractic physician in that case) becomes an ERISA "beneficiary" entitled to pursue ERISA claims when an insured patient "designate[s] [the provider] as the person to receive her benefits." *Id.* at 699. But "for jurisdictional purposes, anyone with a ***colorable*** claim for benefits" can assert ERISA claims and "[t]he ***possibility*** of direct payment is enough to establish subject matter jurisdiction.'" *Id.* at 700 (emphasis added). *See Connecticut State Dental Association v. Anthem Health Plans, Inc.,* 591 F.3d 1337, 1353 (11th Cir. 2009) (adopting *Kennedy*'s analysis and holding that the provider

---

[2] Notably, most of the authority supportive of more narrowly construing assignments under ERISA, as Horizon suggests here, are inapposite. *See, e.g., Cmty. Med. Ctr. v. Local 464A UFCW Welfare Reimbursement Plan*, 143 Fed. Appx. 433, 435-36 (3d Cir. 2005) (refusing to exercise federal jurisdiction under the doctrine of complete ERISA preemption where there is "no evidence of any assignments executed by the plan participants"); *N. Jersey Ctr. for Surgery, P.A. v. Horizon Blue Cross Blue Shield of N.J., Inc.*, 2008 U.S. Dist. LEXIS 71231, *8-9 (D.N.J. Sept. 17, 2008) (refusing to accept Horizon's duplicitous argument that removal under complete ERISA preemption was appropriate based upon assignments while concurrently asserting a defense questioning the validity of those same assignments); *Cooper Hosp. Univ. Med. Ctr. v. Seafarers Health & Benefits Plan*, 2007 U.S. Dist. LEXIS 71358, *4-5 (D.N.J. Sept. 25, 2007) (refusing to exercise federal jurisdiction under the doctrine of complete ERISA preemption where the only evidence of a valid assignment proffered by the party seeking removal was billing forms as opposed to actual assignments); *Briglia v. Horizon Healthcare Servs.*, 2005 U.S. Dist. LEXIS 18708, *15 (D.N.J. May 13, 2005) (finding an "unambiguous" anti-assignment provision enforceable in the absence of evidence that it has been waived).

plaintiffs' "rights to direct payment of benefits are thus sufficient to confer standing").

Because the Plaintiffs allege that they both obtained executed assignment of benefits forms from the patients whose benefits are in issue, and dealt directly with Horizon with respect to the benefit claims on behalf of the patients in issue, this creates the necessary assignment for standing. *See Porter v. Anthem Health Plans of Kentucky, Inc.*, 2010 U.S. Dist. LEXIS 25791, *7 (E.D. Ky. March 18, 2010) ("As discussed by the Court in *Davila*, an actual payment to the provider creates an assignment of benefits, thereby endowing the provider with standing to bring an ERISA claim."); *see also Daniels v. Thomas & Betts Corp.*, 263 F.3d 66, 78-79 (3d Cir. 2001) ("In order for [a plaintiff] to be 'entitled'" to benefits so as to have standing to pursue an ERISA claim, "it is not necessary that she establish that she had a meritorious claim; it is sufficient if she demonstrates that she had a 'colorable claim that . . . she will prevail in a suit for benefits.'") (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117 (1989)); *Spectrum v. Valley Truck Parts*, 2008 U.S. Dist. LEXIS 102040, *3 (W.D. Mich. Dec. 17, 2008) ("'one is a beneficiary with ERISA standing if he has a reasonable or colorable claim to benefits under an ERISA plan'") (quoting *Crawford v. Roane*, 53 F.3d 750, 754-55 (6th Cir. 1995)). Plaintiff, therefore, clearly satisfy the requirement that they make a "colorable claim to benefits," such that they should be deemed to have standing to assert ERISA claims at this early stage of the litigation; *Dudley v. Nisource Corp. Servs., Co.*, 2006 U.S. Dist. LEXIS 26395, *7 (E.D. KY Apr. 18, 2006) ("the term 'beneficiary' [in ERISA] encompasses 'potential beneficiaries'") (quoting *Sladek v. Bell Sys. Mgmt. Pension Plan*, 880 F.2d 972 (7th Cir. 1989)). Moreover, providers asserting standing do not have to identify specific assignments in their pleadings. Rather, that can be developed through discovery.

For example, in *Nat'l Alliance, LLC v. Blue Cross & Blue Shield of Georgia*, 598

F.Supp.2d 1344 (N.D. Ga. 2009), the court explicitly held that providers do not need to produce the assignments in order to show standing:

> The question is whether this information needs to be in the complaint and the court finds that it does not. Plaintiffs have alleged that some of their patients are covered by ERISA and some are not. The court has discussed that Plaintiffs' state law breach of contract claim for non-ERISA patients survives Defendant's motion to dismiss. The court has also concluded that Plaintiffs' ERISA claims for patients on a plan covered by ERISA also survive Defendant's motion to dismiss. The court does not find that *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), requires that a party plead policy number and other such details in its complaint or produce written assignment of benefits with the complaint. *Twombly* held that a complaint "does not need detailed factual allegations," but those allegations made "must be enough to raise a right to relief above the speculative level." *Id*. at 1964-65. The court finds Plaintiffs have done so here. *See also Watts v. Florida International University*, 495 F.3d 1289, 1295-96 (11th Cir. 2007) (describing that *Twombly* does not "impose a probability requirement at the pleading stage" but rather "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of a necessary element").

*Id*. at 1362. Furthermore, for pleading purposes, there is no need for Plaintiffs to tie a particular assignment to a specific patient or ERISA plan, so long as there is evidence that assignments are generally given as reflected on a claim form. *See Conn. State Dental Ass'n,* 591 F.3d at 1353 ("[A]lthough Anthem did not link any particular assignment to a particular ERISA plan, [its] affidavit sufficiently demonstrates that the submitted assignments in the claim forms are representative of assignments [the provider plaintiffs] received for services they rendered, which would necessarily include patients covered by ERISA plans administered by Anthem."). Surely, the Plaintiffs' allegations here more than satisfy this relatively nominal threshold.

During discovery, Horizon will have an opportunity to obtain copies of the actual assignment(s) received by the Plaintiffs, after which it can determine whether summary judgment is appropriate. Even then, however, the Plaintiffs may be able to demonstrate that Horizon waived its right to challenge the validity of any assignments due to its direct dealings with the Plaintiffs and the manner in which it treated its claims. *See Gregory Surgical Services,*

*LLC v. Horizon Blue Cross Blue Shield of New Jersey, Inc.*, 2007 U.S. Dist. LEXIS 94056, *9-10 (D.N.J. Dec. 26, 2007) (finding that Horizon waived its right to assert anti-assignment clause, based on "course of conduct"); *Fresenius Medical Care Holdings, Inc. v. Brooks Food Group, Inc.*, 2007 U.S. Dist. LEXIS 63618 (W.D.N.C. Aug. 28, 2007) ("an ERISA plan essentially ratifies an assignment when it makes medical benefits payments to a purported assignee, and the Plan may later not object to the assignment when a coverage dispute results in litigation, even where the Plan's provisions contain an anti-assignment clause") (citing *Herman Hosp. v. MEBA Medical & Ben. Plan*, 959 F.2d 569, 574 (5th Cir. 1992)). Either way, Plaintiffs have satisfied their burden ***at the pleading stage*** to survive Horizon's standing challenge.

Significantly, the primary case relied upon by Horizon in asserting its more rigorous theory of pleading derivative standing under ERISA, *Franco v. Conn. Gen. Life Ins. Co*., 818 F. Supp. 2d 792 (D.N.J. 2011), involved several distinguishing characteristics that Judge Chesler explicitly acknowledged when explaining the need for additional precision:

> Provider Plaintiffs allege that they may "stand in the shoes" of their patients to assert the patients' rights under the applicable ERISA health plans, but fail to plead facts (for example, actual assignment language) to support their legal conclusion that a valid assignment of the proper breadth was given by patients. ***This deficiency is particularly glaring in light of the fact that in this action, and in the same consolidated class action pleading containing Provider Plaintiffs' allegations, plan subscribers also assert ERISA § 502 claims themselves seeking to recover for the very same type of injuries — underpayment of ONET benefits and other ERISA violations. The inherent tension in the pursuit of ERISA claims by both plan subscribers and providers who claim standing as assignees of the subscribers renders the need for the exact language of the applicable assignment provisions that much more crucial to sorting out the standing issue***.

818 F. Supp. 2d at 811 (emphasis added). So when faced with potentially duplicative claims brought by a putative class of providers asserting derivative standing and another putative class of patients − unique circumstances, to say the least − the Court concluded that additional specificity with regard to the assignments being relied upon was necessary. *Id*.

This isolated decision, however, stands in stark contrast to the overwhelming weight of authority in this district. For example, in *Premier Health Ctr., P.C. v. UnitedHealth Group*, 2012 U.S. Dist. LEXIS 44878 (D.N.J. Mar. 30, 2012), Judge Salas recently summarized this Courts holding in *Sportscare* while upholding derivative standing at the pleadings stage:

> The Court in *Sportscare of America, P.C. v. Multiplan, Inc.*, No. 10-04414, 2011 U.S. Dist. LEXIS 14251, 2011 WL 500195 (D.N.J. Feb. 10, 2011), dealt with circumstances similar to those presented here. In that case the Court adopted a Magistrate Judge's recommendation that the Court deny plaintiff's motion for remand, finding that plaintiff's claims are sufficient to establish ERISA claims for federal jurisdiction. *See* 2011 U.S. Dist. LEXIS 14251, [WL] at *1; *see also Sportscare of America, P.C. v. Multiplan, Inc.*, No. 10-4414, 2011 U.S. Dist. LEXIS 6295, 2011 WL 223724, at *4 (D.N.J. January 24, 2011). ***In their complaint, plaintiffs only provided the following statement with regard to the existence of assignments: "At all times mentioned herein the plaintiff was out-of-network and did not have a contract with any of the defendants therefore entitling the plaintiff to be paid for services rendered to individual insureds through the use of assignment of benefits documents or through patient reimbursement."*** 2011 U.S. Dist. LEXIS 6295, [WL] at *3 (citation omitted). Plaintiff in that case alleged that defendant was required to provide proof of actual assignments in order to establish subject matter jurisdiction under ERISA in federal court. *Id.* The court disagreed, and found plaintiff's pleading conclusively established the existence of federal jurisdiction. *Id.* The court determined that the actual existence of assignments was irrelevant for the purposes of Plaintiff's remand motion. 2011 U.S. Dist. LEXIS 6295, [WL] at *4. It noted that "all well-pleaded allegations in [the] complaint are assumed true in determining existence of federal subject matter jurisdiction." *Id.* (citing *Goosby v. Osser*, 409 U.S. 512, 521 n.7, 93 S. Ct. 854, 35 L. Ed. 2d 36 (1973)). ***Most importantly, the court held that "Defendants need not attach the assignments to their notice of removal or supply them with their briefs. Plaintiff has unequivocally alleged that assignments exist and has pleaded that it is relying on them to support its right to recovery. Nothing further is required."*** *Id.*
>
> The Court finds Judge Martini's decision persuasive. Accordingly, the reasoning that motivated Judge Martini's decision in *Sportscare* guides this Court's reasoning in grappling with the standing issue presented here.

2012 U.S. Dist. LEXIS 44878, at * 16-17 (emphasis added). So notwithstanding Horizon's arguments to the contrary, at this stage of the litigation, all that is required to establish derivative standing under ERISA is that Plaintiffs unequivocally allege that they have obtained assignments from their patients and affirmatively plead reliance on them in support of recovery.

19

### III.   PLAINTIFFS PROPERLY SEEK
#### UNPAID BENEFITS UNDER § 502(a)(1)(B) of ERISA

When, upon receipt of a claim from either a provider or a patient, Horizon determines that benefits are not payable under the applicable Horizon Plan, this constitutes an "Adverse Benefit Determination" under ERISA, which is defined as follows:

> The term "adverse benefit determination" means any of the following: a denial, reduction, or termination of, or a failure to provide or make payment (in whole or in part) for, a benefit, including any such denial, reduction, termination, or failure to provide or make payment that is based on a determination of a participant's or beneficiary's eligibility to participate in a plan, and including, with respect to group health plans, a denial, reduction, or termination of, or a failure to provide or make payment (in whole or in part) for, a benefit resulting from the application of any utilization review, as well as a failure to cover an item or service for which benefits are otherwise provided because it is determined to be experimental or investigational or not medically necessary or appropriate.

29 C.F.R. § 2560.503-1(m)(4). Ergo, Horizon's internal claims adjudication policy, whereby all benefit claims for E/M services, passive modalities, and active therapies performed by chiropractors were summarily denied, resulted in Adverse Benefit Determinations.

The Department of Labor ("DOL") has provided further clarification of the scope of Adverse Benefit Determinations in a series of responses it issued to frequently asked questions ("FAQ") concerning ERISA. *See* http://www.dol.gov/ebsa/faqs/faq_claims_proc_reg.html (last visited May 30, 2012). Responding to a query regarding whether a reduction of a claim based on the application of a plan's copayment or deductible requirements constitutes an Adverse Benefit Determination, the DOL made clear that it does, because *any* decision not to pay a submitted claim in full constitutes an Adverse Benefit Determination:

> . . . In any instance where the plan pays less than the total amount of expenses submitted with regard to a claim, while the plan is paying out the benefits to which the claimant is entitled under its terms, the claimant is nonetheless receiving less than full reimbursement of the submitted expenses. Therefore, in order to permit the claimant to challenge the plan's calculation of how much it is required to pay, the decision is treated as an adverse benefit determination under the regulation. Providing the claimant with the required notification of adverse

benefit determination will give the claimant the information necessary to understand why the plan has not paid the unpaid portion of the expenses and to decide whether to challenge the denial, *e.g.,* the failure to pay in full. This approach permits claimants to challenge whether, for example, the plan applied the wrong co-payment requirement or deductible amount. The fact that the plan believes that a claimant's appeal will prove to be without merit does not mean that the claimant is not entitled to the procedural protections of the rule. . . .

DOL FAQ at 13 (Question C-12). 65. Under this definition, Horizon's systemic practice of failing to individually evaluate the disparate components of claims for multiple services and of denying separate payment for separate services constitutes an Adverse Benefit Determination under ERISA. The resultant withholding of authorized benefits by Horizon is a "reduction" in benefits or "a failure to provide or make payments (in whole or in part) for a benefit," thereby satisfying the requirement for an Adverse Benefit Determination under ERISA.

Nevertheless, Horizon contends that "there simply is no ERISA event at all" here, because "no patient has any liability." Db18. In doing so, Horizon attempts to couch the issues in this case as nothing more than a mere contractual fee dispute. This, of course, simply ignores the findings of fact made by DOBI; which concluded that Horizon's systemic implementation of a claims assessment policy that "as a general rule" excludes all separate reimbursement for certain chiropractic services is an "unfair [trade] practice." Cpt. ¶¶ 79-80. To say nothing of how duplicitous it is for Horizon to argue on one hand that the Plaintiffs lack derivative standing under ERISA because they retained the right to "balance bill" their patients for non-covered services[3], Db16, while concurrently positing that the failure to do so indicates that Plaintiffs

---

[3] In its brief, Horizon claims that Participating Providers may not "balance bill" patients. Db18, note 12. This is admittedly true where there is merely a difference between an Participating Provider's customary fee and Horizon's contractual fee schedule relative to a "covered" service. But no such prohibition extends to "non-covered" services, as E/M services, passive modalities, and active therapies were irrefutably characterized under Horizon's prior chiropractic claims adjudication policies. Indeed, DOBI rejected Horizon's contention that its payment for CMT constituted a "bundled" or "global" fee for all services provided by chiropractic physicians when it ordered Horizon to "individually evaluate whether E/M and physical modality services billed

cannot establish that their patients had valid claims to assign in the first place, Db17.

The bottom line is this: the Plaintiffs rendered separately reimbursable professional services to Horizon Insureds, who were in turn entitled to separately compensable benefits for those professional services, pursuant to the terms and conditions of ERISA plans administered by Horizon. And Horizon's failure to individually evaluate disparate components of claims for multiple chiropractic services and denial of separate payment for these services not only violated the Unfair Claims Settlement Practice Act, but also constituted Adverse Benefit Determinations under ERISA; which, of course, may be challenged under § 502(a)(1)(B).

## IV.  PLAINTIFFS PROPERLY SEEK
## EQUITABLE RELIEF UNDER § 502(a)(3) of ERISA

ERISA's "procedural protections" come into play *any time* an insurer determines that the full bill of a provider should not be paid. Once an Adverse Benefit Determination is made, ERISA requires the insurer to provide proper notification of the denial, with "[t]he specific reason or reasons for the adverse determination," "[r]eference to the specific plan provisions on which the determination is based," "[a] description of any additional material or information necessary for the claimant to perfect the claim," "[a] description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review," and making available any "internal rule, guideline, protocol, or other similar criterion . . . relied upon in making the adverse benefit determination." 29 C.F.R. § 2560.503-1(g). ERISA regulations further require that any employee benefit plan shall provide a proper means to appeal an adverse benefit determination "to an appropriate named fiduciary of the plan, and under which there will be a full and fair review of the claim and the adverse benefit

---

by chiropractors are significantly separable from Chiropractic Manipulative Treatment or other services provided by chiropractors." Cpt. ¶ 81.

determination." 29 C.F.R. § 2560.503-1(h). These requirements ensure that affected parties are able to create an adequate administrative record for efficient judicial review.

Included in ERISA's civil enforcement scheme is § 502(a)(3), which contemplates "[a]n action by a plan participant, beneficiary, or fiduciary (a) to enjoin any act or practice that violates ERISA or the terms of any ERISA plan, or (b) to obtain other appropriate equitable relief (i) to redress such violations, or (ii) to enforce ERISA or an ERISA plan." 29 U.S.C. § 1132 (a)(3). Plaintiffs allege that in applying its so-called "bundling" policy to chiropractic claims, Horizon made Adverse Benefit Determinations. And because in doing so it used a series of boiler-plate denial codes, each of which flagrantly misrepresented the compensability of the services in issue based upon the terms, conditions, and benefit descriptions contained in the underlying Plans, Cpt. ¶ 92, Horizon effectively deprived its Insureds (and/or the Plaintiffs as their assignees) of *any* meaningful appeal rights whatsoever. Thus, Plaintiffs now seek declaratory and injunctive relief to require Horizon to comply with Plan terms and to use appropriate methodologies to "individually evaluate whether E/M and physical modality services billed by chiropractors are significantly separable from Chiropractic Manipulative Treatment or other services provided by chiropractors," which is, not coincidentally, precisely what DOBI ordered.

That relief can properly be provided under Section 502(a)(3), as the Northern District of Illinois recognized in upholding comparable "process-based" or "failure to provide full and fair review" claims in *Pa. Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*, 2010 U.S. Dist. LEXIS 49151, *46 (N.D. Ill. May 17, 2010) (plaintiffs claim under ERISA § 502(a)(3) "seeks to enforce a review process that is mandated by the statute itself, not by the terms of subscribers' individual plans," and "is therefore better characterized as a claim 'to enjoin any act or practice which violates any provision of this subchapter . . . or to obtain other appropriate equitable relief'

23

as described in section 502(a)(3)"; the court "concludes, therefore, that plaintiffs may seek relief under the 'catch-all' provision of section 502(a)(3)"); *see also Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478, 491-92 (6th Cir. 2009) ("[T]he plaintiff in *Hill* [*v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710, 718 (6th Cir. 2005)] also brought a claim for injunctive relief under § 502(a)(3) to require the defendant 'to alter the manner in which it administers all of the . . . claims.' *Id*. The Court noted that this § 502(a)(3) claim was for 'plan-wide injunctive relief, not [for] individual-benefit payments.' *Id*. Although the plaintiff had the ability to seek damages for improperly denied benefits, the Court allowed the plaintiff to proceed on both claims because '[o]nly injunctive relief of the type available under § [502(a)(3)] will provide the complete relief sought.' *Id*."). Nonetheless, Horizon misconstrues the nature of the relief sought by Plaintiffs under § 502(a)(3) as merely seeking to impose "liability" on it for failing to provide a full and fair review of denied claims as is required by ERISA. Db18-19. More troubling, however, is Horizon's claim that "Plaintiffs' second Count seeks a remedy not provided for by ERISA §502(a)(3)." Db18.

In its recent decision in *CIGNA Corp. v. Amara*, 131 S.Ct. 1866 (2011), the Supreme Court conclusively established that the disgorgement sought by Plaintiffs **may** be awarded under ERISA § 502(a)(3) as a means of providing "make-whole relief." *Amara*, 131 S.Ct. at 1880. In that action, CIGNA was sued for changing its pension plan in a manner which reduced the benefits to the beneficiaries below the level to which they were entitled. While the Court determined that a district court did not have the authority to reform the plan to provide the lost benefits under ERISA § 502(a)(1)(B), it found that monetary relief to redress the resulting injuries **was** available under ERISA § 502(a)(3), stating:

> [T]he District Court injunctions require the plan administrator to pay to already retired beneficiaries money owed them under the plan as reformed. But the fact

> that this relief takes the form of a money payment does not remove it from the category of traditionally equitable relief. Equity courts possessed the power to provide relief in the form of monetary "compensation" for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment. . . . Indeed, prior to the merger of law and equity this kind of monetary remedy against a trustee, sometimes called a "surcharge," was "exclusively equitable." . . .
>
> The surcharge remedy extended to a breach of trust committed by a fiduciary encompassing any violation of a duty imposed upon that fiduciary. . . . Thus, insofar as an award of make-whole relief is concerned, the fact that the defendant in this case, unlike the defendant in *Mertens* [*v. Hewitt Associates,* 508 U.S. 248 (1993))], is analogous to a trustee makes a critical difference. See 508 U.S., at 262-263 . . . In sum, contrary to the District Court's fears, the types of remedies the court entered here fall within the scope of the term "appropriate equitable relief" in § 502(a)(3).

*Id.* (citations omitted). As such, this Court may, in fact, order Horizon to re-process each of the previously-denied claims here in issue, using appropriate methodologies to "individually evaluate whether E/M and physical modality services billed by chiropractors are significantly separable from Chiropractic Manipulative Treatment or other services provided by chiropractors." And just because this relief may take the form of monetary compensation, it is still "equitable" in nature, and thus available as a remedy under § 502(a)(3).

## V.    PLAINTIFFS ADEQUATELY PLEAD EXHAUSTION AND/OR FUTILITY OF ADMINISTRATIVE REMEDIES

Horizon argues that dismissal is appropriate in this matter because Plaintiffs have failed to avail themselves of the administrative remedies available under the terms and conditions of the ERISA and non-ERISA Plans at issue. Admittedly, when claiming a benefit under an ERISA retirement plan, a claimant must ordinarily exhaust the procedures established by the Plan for making a claim for benefits before the employee is entitled to court review. *Wolf v. National Shopmen Pen. Fund*, 728 F.2d 182, 185 (3d Cir. 1984). This requirement, however, is not absolute. "A plaintiff is excused from exhausting administrative procedures under ERISA if it would be futile to do so." *Harrow v. Prudential*, 279 F.3d 244, 249 (3d. Cir. 2002); *see also*

*Berger v. Edgewater Steel Co.*, 911 F.2d 911, 916 (3d Cir. 1990) ("Although the exhaustion requirement is strictly enforced, courts have recognized an exception when resorting to the administrative process would be futile."). "Plaintiffs merit waiver of the exhaustion requirement when they provide a clear and positive showing of futility." *Patient Care Assocs., L.L.C. v. N.J. Carpenters Health Fund*, 2012 U.S. Dist. LEXIS 52878, *14 (D.N.J. Apr. 16, 2012) (citing *Harrow*, 279 F.2d at 249); *see also Berger*, 911 F.2d at 916; *Brown v. Cont'l Baking Co.*, 891 F. Supp. 238, 241 (E.D. Pa. 1995). So where a plaintiff can show that "it is clear that seeking further administrative review of the decision would be futile," then courts will excuse the plaintiff's failure to pursue those remedies. *Id.* (quoting *Frishberg v. Deloitte & Touche Pension Plan*, 2008 U.S. Dist. LEXIS 65343, * 15 (D. Conn. Aug. 26, 2008).

Any analysis of exhaustion on futility grounds rests upon weighing several factors: (1) whether plaintiff diligently pursued administrative relief; (2) whether plaintiff acted reasonably in seeking immediate judicial review under the circumstances; (3) existence of a fixed policy denying benefits; (4) failure of the insurance company to comply with its own internal administrative procedures; and (5) testimony of plan administrators that any administrative appeal was futile. Of course, all factors may not weigh equally. *Harrow*, 279 F.3d at 250; *see also Berger*, 911 F.2d at 916-17; *Metz v. United Counties Bancorp.*, 61 F. Supp. 2d 364, 383-84 (D.N.J. 1999). The *Berger* Court affirmed a finding of futility where the District Court excused three of four plaintiffs seeking retirement under a particular pension plan from exhausting administrative remedies. *Berger*, 911 F.2d at 917. The Court agreed that an across the board denial based upon a singular rationale weighed in favor of concluding that "any resort by these employees to the administrative process would have been futile." *Id.*

Here, the benefit denials Plaintiffs challenge here were made pursuant to a systemic,

policy, applied by Horizon uniformly, and without exception, to all E/M services, passive modalities, and active therapies performed by chiropractors. Moreover, Horizon vigorously defended its so-called "bundling" policy before DOBI over the course of several years. This scenario is virtually identical to the facts of *Corsini v. United Healthcare Corp.*, 965 F. Supp. 265 (D.R.I. 1997), where the District of Rhode Island observed:

> Here, it is clear that no purpose would be served by requiring the plaintiffs to seek review of their co-payment claim by the plan administrator. ***It is undisputed that the challenged practice represents a long-standing policy that has been applied consistently in calculating the co-payment obligations of all Plan participants. Moreover, by vigorously defending that policy in this litigation and in similar litigation pending in other jurisdictions, the defendants have made it clear that there is virtually no possibility that they will voluntarily abandon the policy. Thus, it is inconceivable that resort to the administrative review process would result in anything other than a denial of the plaintiffs' claim***.

965 F. Supp. at 269-70 (emphasis added). So the *Corsini* court upheld these particular claims, noting that "[t]he law does not require parties to engage in meaningless acts or to needlessly squander resources as a prerequisite to commencing litigation." *Id.* at 269 (*citing Republic Industries, Inc. v. Central Pennsylvania Teamsters Pension Fund*, 693 F.2d 290, 296 (3rd Cir. 1982); *DePina v. General Dynamics Corp.*, 674 F. Supp. 46, 51 (D. Mass. 1987)).

## VI.   PLAINTIFFS' STATE LAW CLAIMS ARE PLAUSIBLE UNDER *TWOMBLY* AND ITS PROGENY

Under Fed. R. Civ. P. 8, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In *Iqbal*, the Supreme Court refined the "plausibility" pleading-threshold it first articulated in *Twombly* by setting forth a two-prong framework to analyze whether a claimant has shown it is entitled to relief under Rule 8. First, the reviewing Court must discern those allegations that are not conclusory and, therefore, must be taken as true. *Iqbal*, 129 S. Ct. at 1950. Second, the court determines whether the

complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id.* at 1949, citing 550 U.S. at 570. "A claim has facial plausibility," under *Iqbal*, "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949.

To that end, the Supreme Court has held that "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted); *see also Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (holding that a well-pleaded complaint may proceed even if recovery is unlikely). *See Iqbal*, 129 S. Ct. at 1949 ("The plausibility standard is not akin to a probability requirement."). *Twombly*'s plausibility standard requires the pleader to include "enough factual matter (taken as true) to suggest the required element," which "does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). Thus determining plausibility is "a context-specific task" that requires the Court to rely upon its "judicial experience and common sense." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 2111 (3d Cir. 2009).

### A.    Plaintiffs State Plausible Claims for Breach of Contract

To state a claim for breach of contract, a claimant must allege: (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations. *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007) (citing *Video Pipeline, Inc. v. Buena Vista Home Entertainment*, Inc., 210 F. Supp. 2d 552, 561 (D.N.J. 2002). In its brief, Horizon purports to add an additional requirement, opining that a plaintiff must also identify the specific provisions of the applicable

contract that have been breached in order to plausibly state a claim under *Twombly*. Db27. Nonetheless, the case Horizon cites for this proposition, *Ctr. for Special Procedures v. Conn. Gen. Life Ins. Co.*, 2010 U.S. Dist. LEXIS 128289 (D.N.J. Dec. 6, 2010), renders no such holding. Instead, Judge Cooper merely restated that in order to state a claim for breach of contract, a plaintiff must identify the contract at issue in order to "set forth fair notice" of a claim and the "grounds upon which it rests." *Id.*at 13-14 (citing *In re Samsung DLP Television Class Action Litig.*, 2009 U.S. Dist. LEXIS 100065, at \*6 (D.N.J. Oct. 27, 2009).

So the thrust of Horizon's argument relative to Plaintiffs' claims for breach of contract is that it is not properly "on notice" of what particular provisions of contracts between Horizon and Plaintiffs and/or its Insureds have been breached. This position, however, is absurd; the *only* obligation Horizon has under both its contracts with both providers and subscribers is to pay benefits for Covered Services. Subscribers contract with Horizon in order to secure health benefits, paying a premium to Horizon with the expectation that Horizon will, in turn, pay providers for services rendered rather than requiring the subscriber to make those payments directly. At the same time, providers enter into contracts with Horizon to secure payment, at a guaranteed rate, for services rendered to Horizon Insureds. As it relates to subscribers and providers, Horizon's only obligation is to pay for services rendered. There can be no doubt or question as to which portions of the relative contracts that have been breached or the nature of those breaches; Horizon has but one obligation, and it has breached it unabashedly.

**B.  Plaintiffs State Plausible
    Claims for Unjust Enrichment**

"To state a claim for unjust enrichment, a plaintiff must show that 'defendant(s) received a benefit and that retention of that benefit without payment would be unjust.'" *Ass'n of N.J. Chiropractors v. Aetna, Inc.*, 2012 U.S. Dist. LEXIS 64413, \*33 (D.N.J. May 8, 2012) (quoting

*Mendez v. Avis Budget Group, Inc.*, 2012 U.S. Dist. LEXIS 50775, 2012 WL 1224708 *7 (D.N.J. April 10, 2012)). Admittedly, however, because unjust enrichment is "not an independent theory of liability, but is the basis for a claim of quasi-contractual liability," a plaintiff may not recover on both a breach of contract claim and an unjust enrichment claim. *Id.* This does not, however, preclude a plaintiff from pleading "alternative and inconsistent legal causes of action arising out of the same facts." *Simonson v. Hertz*, 2011 U.S. Dist. LEXIS 32755, * 7 (D.N.J. March 28, 2011). Indeed, as Judge Pisano recently explained in *Ass'n of N.J. Chiropractors*:

> Although a party may not recover on both theories of liability, many courts in this district have allowed a party to assert claims under both theories in the alternative. See *Mendez v. Avis Budget Group, Inc.*, 2012 U.S. Dist. LEXIS 50775, *8 (D.N.J. April 20, 2012)("[A]t this stage of the pleadings, Plaintiff may plead alternative legal theories, but if the [contract] is found void ..., Plaintiff may only proceed with his unjust enrichment claim. In the alternative, if a valid written contract existed on the terms Plaintiff claims, then the existence of this contract would prevent Plaintiff from recovering for quasi-contractual liability as asserted in an unjust enrichment claim."); *Wells Fargo Bank Northwest, N.A. v. American General Life Ins. Co.*, 2011 U.S. Dist. LEXIS 53885, *11 (D.N.J. May 19, 2011) ("Although the gravamen of [the] complaint, even if amended, is still largely contractual, quasi-contract claims may nonetheless be pled in the alternative to contract based claims."); *Simonson v. Hertz Corp.*, 2011 U.S. Dist. LEXIS 32755, *7 (D.N.J. March 28, 2011) ("While a plaintiff may not recover on both a breach of contract claim and an unjust enrichment claim, a plaintiff may plead alternative and inconsistent legal causes of action arising out of the same facts.") (citing *Fed. R. Civ. P.* 8(d)(2); 8(d)(3)); *Torres-Hernandez v. CVT Prepaid Solutions, Inc.*, 2008 U.S. Dist. LEXIS 105413, at *9 (D.N.J. Dec.17, 2008) (unjust enrichment claim may be sustained independently as an alternative theory of recovery); *MK Strategies, LLC v. Ann Taylor Stores Corp.*, 567 F. Supp. 2d 729, 736 (D.N.J. 2008) ("This Court has regularly permitted claims for both unjust enrichment and breach of contract to proceed at the motion to dismiss stage, finding that dismissal of one of these claims would be premature.")(citing cases).

2012 U.S. Dist. LEXIS 64413, at *33-35. As such, Horizon's contention that Plaintiffs may not **plead** both breach of contract and unjust enrichment is simply incorrect.

Horizon further argues that Non-Participating Providers cannot sustain an unjust enrichment claim against Horizon "because they cannot demonstrate that they conferred any

benefit on Horizon." Here, again, Horizon's analysis is flawed. While this Court has admittedly held in a number of commercial cases that direct dealings between the plaintiff and defendant are required in order to sustain an unjust enrichment claim, Db30-31 (citing *Arlandson v. Hartz Mountain Corp*., 792 F. Supp.2d 691, 711 (D.N.J. 2011); *Snyder v. Farnam*, 792 F. Supp.2d 712, 723 (D.N.J. 2011)), "[t]he critical inquiry is whether the plaintiff's detriment and the defendant's benefit are related to, and flow from, the challenged conduct." *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 544 (D.N.J. 2004). So while in a case involving the sale of goods some more "direct" relationship might be appropriate, unjust enrichment claims ***do not*** always require an allegation of direct dealings. *See id* (rejecting an argument that direct dealings are required to establish unjust enrichment as "without merit"); *see also Benefit Trust Life Insurance Co. v. Union National Bank of Pittsburgh*, 776 F.2d 1174, 1177 (3d Cir. 1985) ("the essence of the doctrine of unjust enrichment is that there is no direct relationship between the parties.").

Regardless, here there is a sufficiently direct connection between the Plaintiffs and Horizon to sustain an unjust enrichment claim even though Plaintiffs did not directly provide professional chiropractic services to Horizon. Plaintiffs' detriment (uncompensated professional chiropractic services provided to Horizon Insureds) and Horizon's unjust benefit (insurance premiums received from Horizon Insureds who received said professional chiropractic services) stem from the same set of operative facts. Indeed, but for Horizon's illegal bundling scheme, and Plaintiffs' experience no loss and Horizon no ill-gotten gain. As such, it would be unjust under the circumstances for Horizon to retain that benefit, at the expense of Plaintiffs.

### C.    Plaintiffs State Plausible Claims for Negligent Misrepresentation and Fraud

In its brief, Horizon contends that Plaintiffs fail to state claims for both Negligent Misrepresentation and Fraud because: (1) its illegal bundling practices are exempt from tort

liability under the economic loss doctrine; and (2) the irrefutably false statements contained in EOB statements sent to both the Plaintiffs and their patients were merely expressions of opinion, as opposed to statements of fact. Notwithstanding Horizon's arguments, in order to state a claim for negligent misrepresentation, a plaintiff must show "[a]n incorrect statement [of fact], negligently made and justifiably relied on," proximately causing an economic loss. *Konover Constr. Corp. v. E. Coast Constr. Servs. Corp.*, 420 F.Supp.2d 366, 370 (D.N.J. 2006). And in order to state a claim for common law fraud, a plaintiff must allege: (1) a material misrepresentation of a presently existing or past fact, (2) knowledge or belief by the defendant of its falsity, (3) intent by the defendant that the other party rely on it, (4) reasonable reliance by the other party, and (5) resulting damages. *Horizon Blue Cross Blue Shield of N.J. v. Transitions Recovery Program*, 2011 U.S. Dist. LEXIS 62184, *34 (D.N.J. June 10, 2011) (citing *Triffin v. Automatic Data Processing, Inc.*, 394 N.J. Super. 237 (App. Div. 2007).

As to Horizon's first point, the economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows ***only*** from a contract." *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 618 (3d Cir. 1995) (emphasis added). And whether a tort claim can be asserted alongside a breach of contract claim depends on whether the tortious conduct is extrinsic to the contract between the parties. *Arcand v. Brother Int'l Corp.*, 673 F.Supp.2d 282, 308 (D.N.J. 2009). Moreover, Courts in this district have concluded that the existence of a breach of contract claim does not preclude a plaintiff from bringing a fraud claim arising out of the same facts. *See Lo Bosco v. Kure Engineering Ltd.*, 891 F. Supp. 1020 (D.N.J. 1995) (permitting a party to sue a purported joint venture partner for both fraud and breach of contract). This is consistent with New Jersey law, which recognizes that misrepresentation claims rooted in facts that are "extrinsic" or "collateral" to contractual

obligations are not subject to the economic loss rule. *See e.g., Coastal Group, Inc. v. Dryvit Systems, Inc.*, 274 N.J. Super. 171, 177-79 (App. Div. 1994) (holding that the economic loss doctrine did not preclude a commercial buyer's claim for fraud and misrepresentation).

Here, Plaintiffs' misrepresentation claims are rooted in the allegations that are merely collateral to the underlying contractual obligations being concurrently pursued. First, Horizon's use of misleading, boiler-plate denial codes – most of which referenced "ineligibility" of the disputed services when performed by a chiropractor, as opposed to any bundling policy – is tangential, at best, to its contractual obligation to process and pay benefit claims in compliance with the terms and conditions of the Plans it administers. Second, Horizon's obligation to "individually evaluate whether E/M and physical modality services billed by chiropractors are significantly separable from Chiropractic Manipulative Treatment or other services provided by chiropractors" flows from the New Jersey Unfair Claims Settlement Practices Act, which is an independent legal obligation from the contractual obligations here in issue. And finally, the damages that resulted from Horizon's misrepresentations – whether made negligently or intentionally – extend beyond mere non-payment of the underlying claims. Cpt. at ¶ 95 (noting that as a result of Horizon's misleading denial codes, Plaintiffs and other members of the putative class were deprived of any meaningful opportunity to file appeals).

    **D.**    **Plaintiffs State Plausible
Claims for Promissory Estoppel**

Under New Jersey law, to state a claim for promissory estoppel, Plaintiff must plead facts establishing "1) a clear and definite promise; 2) made with the expectation that the promisee will rely upon it; 3) reasonable reliance upon the promise; 4) which results in definite and substantial detriment." *Commerce Bancorp, Inc. v. BK Int'l Ins. Brokers, Ltd.*, 490 F. Supp. 2d 556, 561 (D.N.J. 2007) (quoting *Lobiondo v. O'Callaghan*, 357 N.J. Super. 488, 499 (App. Div. 2003)).

And while plaintiffs may alternatively plead breach of contract and promissory estoppel, *Ctr. for Special Procedures*, 2010 U.S. Dist. LEXIS 128289, at *26, "[i]ndefinite promises or promises subject to change by the promisor are not 'clear and definite' and cannot give rise to a claim for promissory estoppel." *Del Sontro v. Cendant Corp.*, 223 F. Supp. 2d 563, 574 (D.N.J. 2002) (citing *Aircraft Inventory Corp. v. Falcon Jet Corp.*, 18 F. Supp. 2d 409, 416 (D.N.J. 1998); *Malaker Corp. Stockholders Protective Comm. v. First Jersey Nat'l Bank*, 163 N.J. Super. 463, 479-80 (App. Div. 1978)). Here, Plaintiffs most certainly identify a clear and definite promise. Cpt. at ¶ 153 ("Plaintiffs and members of the Non-ERISA Class, to their detriment, reasonably relied upon Horizon's numerous assurances and promises that it would process claims and issue benefits in accordance with the terms of its Provider Agreements, where applicable, and also in accordance with the Plans by and through which its Insured received benefits"). No further specificity is required at this stage of the litigation, even under *Ctr. for Special Procedures.*

### E.    Plaintiffs State Plausible Claims for Breach of the Implied Covenant of Good Faith and Fair Dealing

Every insurance contract contains an implied covenant of good faith and fair dealing. *Price v. N.J. Mfrs. Ins. Co.,* 182 N.J. 519, 526 (2005); *see also Sears Mortgage Corp. v. Rose,* 134 N.J. 326, 347 (1993); *Griggs v. Bertram*, 88 N.J. 347, 360-61 (1982). This requires that neither party "shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Seidenberg v. Summit Bank*, 348 N.J. Super. 243, 254 (App. Div. 2002). As the New Jersey Supreme Court has articulated:

> [A] party exercising its right to use discretion . . . under a contract breaches the duty of good faith and fair dealing if that party exercises its discretionary authority arbitrarily, unreasonably, or capriciously, with the objective of preventing the other party from receiving its reasonably expected fruits under the contract. Such risks clearly would be beyond the expectations of the parties at the formation of a contract when parties reasonably intend their business relationship to be mutually beneficial. They do not reasonably intend that one party would use

the powers bestowed on it to destroy unilaterally the other's expectations without legitimate purpose.

*Wilson v. Amerada Hess Corp.*, 168 N.J. 236, 250 (2001).

Notably, Insurance companies have "an even greater obligation than the insured to act in good faith. [They] must not put "technical encumbrances or hidden pitfalls" in the way of unsophisticated customers that would undermine their 'reasonable expectations.'" *Price,* 182 N.J. at 526 (quoting *Rose*, 134 N.J. at 347)). Here, Horizon's "bundling" of claims for separately identifiable services provided by chiropractic physicians constituted bad faith due to the "absence of a reasonable basis for denying benefits for the policy and [Horizon]'s knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *Gingham v. Liberty Mut. Fire Ins. Co.*, 2010 U.S. Dist. LEXIS 32234, *4-5 (D.N.J. Mar. 26, 2010).

## VII.   HORIZON IS A PROPER DEFENDANT FOR CLAIMS <u>RELATED TO THE SELF-FUNDED PLANS IT ADMINISTERS</u>

Horizon argues that it is "not a proper defendant as to claims under self-insured plans" because it "functions solely as the plan administrator." Db37-38. Once again, however, Horizon simply ignores the applicable legal framework; which is, whether Horizon acted as a fiduciary on behalf of these self-funded plans when it applied its bundling policy during the insurance claim process. *Cohen v. Independence Blue Cross*, 820 F. Supp. 2d 594, 599 (D.N.J. 2011).

ERISA defines a "fiduciary" as one who "exercises any discretionary authority or discretionary control respecting the management" of an ERISA Plan or "has any discretionary authority or discretionary responsibility in the administration of such [a] Plan." 29 U.S.C. § 1002(21)(a). Congress intended ERISA's definition of fiduciary "to be broadly construed." *Blatt v. Marshall & Lassman*, 812 F.2d 810, 812 (2d Cir. 1987). And as the entity ultimately responsible for administering its Plans, including making coverage decisions relative to chiropractic benefit claims, Horizon is, without question, an ERISA fiduciary. *See Sereboff v.*

*Mid Atlantic Med. Services*, 547 U.S. 356, 361 (2006) (noting that there is "no dispute" that the administrator of an employee benefit plan is a "fiduciary" under ERISA); *Davila*, 542 U.S. at 220 ("[c]lassifying an entity with discretionary authority over benefits determinations as anything but a plan fiduciary would . . . conflict with ERISA's statutory and regulatory scheme"). So, a "plan administrator," Db38, like Horizon, "engages in a fiduciary act when making a discretionary determination about whether a claimant is entitled to benefits under the terms of the plan documents." *Varity Corp. v. Howe*, 516 U.S. 489, 511 (1996); *Firestone*, 489 at 111-13 (noting that making benefit determinations is generally a fiduciary act under ERISA).

Here, Horizon's policy of denying all benefit claims for non-CMT services performed by chiropractic physicians was applied "across-the-board," without any distinction as to whether a particular Plan was fully-insured or self-funded. Cpt. at ¶¶ 79-81. And in denying ***all*** claims for E/M services, passive modalities, and active therapies performed by chiropractors, regardless of which Plan or Plans the benefit claims were submitted under, Horizon irrefutably served as a fiduciary by making Adverse Benefit Determinations, a fiduciary act under ERISA. Notably, this proposition comports with *White Consol. Industries, Inc. v. Lin*, 372 N.J. Super. 480 (App. Div. 2004), upon which Horizon almost exclusively bases its argument, because the administrator in question, unlike Horizon here, did not exercise any discretion over benefit determinations. *Id.* at 486-87. At worst, Plaintiffs are entitled to conduct discovery into the extent to which Horizon imposed its own bundling policies on its self-funded clients. *Cohen*, 820 F. Supp. 2d at 600 ("The lynchpin of fiduciary status is discretion and discretion is a fact specific inquiry").

## VIII.   DR. PROODIAN'S CLAIMS WERE NEITHER RELEASED NOR IMPLICATED BY HIS PRIOR SETTLEMENT WITH HORIZON

Horizon also argues that Proodian claims here are barred by a release against Horizon contained in a settlement agreement entered into by and between Proodian and Horizon on or

about July 18, 2011. This conveniently ignores the scope and context not only of the underlying claim that gave rise to the release, but also the plain language of the release itself.

Releases, like all settlement agreements, are "a contract, and familiar principles of contract law govern." *Tedesco Mfg. Co. v. Honeywell, Int'l, Inc.*, 127 Fed. Appx. 50, 52 (3d Cir. 2005). And, "when the terms of the contract are clear and unambiguous, the Court is without power to do anything but enforce those terms." *Harbour Cove Marine Servs. v. Rabinowitz,* 2005 U.S. Dist. LEXIS 36794, * 9 (D.N.J. 2005); *see also Mellon Bank, N.A. v. Aetna Business Credit, Inc.,* 629 F.2d 1001, 1009 (3d Cir. 1980) ("When a written contract is clear and unequivocal, its meaning must be determined by its contents alone). And here, Proodian's settlement agreement with and release of Horizon involved dealt with claims asserted by Dr. Proodian's practice ***as an assignee*** of several specific Horizon Insureds and dealt with a very limited issue, the compensability of nerve conduction studies under several specific Horizon Plans.

The settlement agreement contains a release of all claims "that were asserted, or could have been asserted, with regard to the subject matter of the Lawsuit," which is a specifically defined term involving several case captions relative to small claims actions filed on behalf of specific Horizon Insureds. Moreover, the subject matter of those actions dealt with Horizon's denial of payment for nerve conduction studies based upon the false premise that chiropractors are not permitted to perform those studies within the scope of their licensure. So the subject litigation involved specific services rendered to a handful of specific Insureds under particular Plans, all of which ***are completely unrelated to the subject matter of this dispute***.

Additionally, Horizon's arguments relative the entire controversy doctrine are equally misplaced. First, while the entire controversy doctrine may be an "extremely robust" device, it must be noted that the it is an equitable device, and as such, is flexible and must be applied on a

case-by-case basis with an eye toward fairness to all parties. *Paramount Aviation Corp. v. Augusta,* 178 F.3d 132 (3d Cir. 1999). "In determining whether successive claims constitute one controversy for purposes of the doctrine, the central consideration is whether the claims against the different parties arise from related facts or the same transaction or series of transactions." *DiTrollo v. Antilles,* 142 N.J. 253, 268 (1995); s*ee also Malaker Corp. Stockholders Protective Comm. v. First Jersey Nat'l Bank,* 163 N.J. Super. 463, 497 (App. Div. 1978). The core facts provide the link between distinct claims against the same or different parties and triggers the requirement that they be determined in one proceeding. *See Newmark v. Gimbel's, Inc.,* 54 N.J. 585 (1969); *Applestein v. United Bd. & Carton Corp.,* 35 N.J. 343 (1961); *Vacca v. Stika,* 21 N.J. 471 (1956). One method of determining whether distinct claims are part of an entire controversy is whether parties have a significant interest in the disposition of a particular claim, one that may materially affect or be materially affected by the disposition of that claim. *Ditrolio v. Antiles,* 142 N.J. 253, 268 (1995). As the *Ditrolio* Court further explained:

> The test for whether claims are "related" such that they must be brought in a single action under New Jersey entire controversy doctrine was expressed in *O'Shea v. Amoco Oil Co.,* 886 F.2d 584 (3d Cir.1989), as follows: ***if parties or persons will, after final judgment is entered, be likely to have to engage in additional litigation to conclusively dispose of their respective bundles of rights and liabilities that derive from a single transaction or related series of transactions***, the omitted components of the dispute or controversy must be regarded as constituting an element of one mandatory unit of litigation.

*Id* (emphasis added). The claims is this case do not derive, at all, from the transactions that gave rise to those claims previously settled by and between Proodian and Horizon. Here, Proodian's claims involve Horizon's improper bundling of E/M services, passive modalities, and active therapies with chiropractic manipulative treatment, whereas the prior litigation dealt with whether or not Proodian, as a chiropractor, was licensed, certified, and /or permitted to perform electro-diagnostic nerve testing. The two issues are entirely dissimilar and do not involve any of

the same questions of fact or law, despite some of the same coverage denials appearing on one or more EOB statements. Db13. Proodian's claims, therefore, are not barred.

## **CONCLUSION**

For all of the foregoing reasons, Plaintiffs respectfully request that Defendants' Motion to Dismiss Complaint (Dkt. 11) be denied in its entirety.


DATED:  May 30, 2012                    Respectfully submitted,

                                         /s/ John W. Leardi
                                        John W. Leardi
                                        Vincent N. Buttaci
                                        Paul D. Werner
                                        **BUTTACI & LEARDI, LLC**
                                        103 Carnegie Center, Suite 101
                                        Princeton, New Jersey 08540
                                        609-799-5150

                                        D. Brian Hufford
                                        Robert J. Axelrod
                                        Susan J. Weiswasser
                                        Anthony F. Maul
                                        **POMERANTZ HAUDEK**
                                          **GROSSMAN & GROSS LLP**
                                        100 Park Avenue
                                        New York, New York 10017
                                        212-661-1100

                                        James E. Cecchi
                                        Lindsey H. Taylor
                                        **CARELLA, BYRNE, CECCHI,**
                                          **OLSTEIN, BRODY & AGNELLO, P.C.**
                                        5 Becker Farm Road
                                        Roseland, New Jersey 07068
                                        973-994-1700

                                        *Counsel for Plaintiffs and the Putative Classes*