UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ALPHONSE DEMARIA**, *et al.*, on their own behalf and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**HORIZON HEALTHCARE SERVICES, INC. d/b/a BLUE CROSS BLUE SHIELD OF NEW JERSEY**, *et al.*,<br><br>Defendants. | No. 11-7298 (WJM)<br><br>**OPINION** |

    This is a putative class action brought by three chiropractors who treated patients insured by Horizon Blue Cross Blue Shield of New Jersey and Horizon HMO ("Horizon" or "Defendants"). The Complaint alleges that Horizon systematically denied payment to the putative class of chiropractors for certain services rendered. Before the Court is Plaintiffs' Motion to Certify a Class pursuant to Federal Rule of Civil Procedure 23. For the reasons set forth below, the Motion is **GRANTED**.

**I.     BACKGROUND**

    According to the Complaint, the putative class members regularly provided three types of chiropractic treatment: (1) chiropractic manipulative therapy ("CMT"); (2) evaluation and management services ("E/M"); and (3) ancillary physical therapy ("PT"). During the class period, Horizon paid the Plaintiffs for CMT but denied all claims for E/M and PT. Horizon explained that it used a practice called "bundling" in which it incorporated payments for all chiropractic treatments into a "global fee" for CMT. Denial of payments for E/M and PT to chiropractors

was automatic, and denial of all appeals was also automatic. Explanation of Benefit forms stated that Horizon denied the class members claims for E/M and PT because chiropractors were not eligible for payment for those services.

In October 2009, the New Jersey Department of Banking and Insurance ("DOBI") determined that Horizon's bundling practice violated New Jersey's Unfair Claim Settlement Practices Act, N.J.S.A. 17B:30-13.1. The DOBI issued a cease and desist order effective April 15, 2010. Plaintiffs seek relief for Horizon's denial of E/M and PT claims that they filed before the DOBI's April 15, 2010 cease and desist order.

### A. Horizon

Horizon offers, underwrites, and administers health benefit plans for more than 3.6 million people in New Jersey. Horizon provides health care benefits in two ways: (1) underwriting and administering "fully insured" plans, where Horizon is both the insurer and the administrator of health care plans, or (2) administering other "self-funded" plans, where Horizon processes and administers claims ultimately paid by the self-insured entity. The "self-funded" line of business is also known as ASO (Administrative Services Only).

Most of the plans operated and/or administered by Horizon are private employer welfare benefit plans governed by the Employment Retirement Security Income Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, et seq., but certain plans are exempt from ERISA coverage. The parties have stipulated that Horizon tracks which of its plans are covered by ERISA and which are ERISA-exempt. (Plaintiffs' Ex. 2 (Sept. 11, 2014 Stipulation at ¶ 5)).

Persons covered by a Horizon Plan ("Horizon Insureds") receive covered services either from a network of participating providers ("Par providers"), or through out-of-network, non-participating providers ("Non Par providers"). Par providers enter into Provider Agreements with Horizon wherein they agree to treat Horizon Insureds in return for a fixed fee. Par providers also agree not to bill the patient for any other charges, other than a Horizon-mandated co-pay or deductible. Non Par providers have no agreement with Horizon; instead, Horizon pays them for treating Horizon Insureds at "usual and customary" rates. Non Par providers do not waive the right to bill their patients for the difference, if any, between Horizon's reimbursement and their regular charges.

Providers create relationships with Horizon Insureds through "Patient Intake Forms." (Opp. Br. 12-13). On Patient Intake Forms, Horizon Insureds frequently: (1) assigned their rights to payment to the provider; (2) agreed to bear the ultimate financial responsibility for their treatments, regardless of what Horizon agreed to pay.

All Plaintiffs and class members electronically submitted to Horizon an industry-standard form (the "Form 1500") to collect payment. These forms contained "CPT codes," a coding system devised by the American Medical Association and mandated by federal law to be used for insurance reimbursement claims. Finally, the Form 1500 contained an assignment to the submitting provider of the Horizon Insureds' right to payment.

Horizon processed Form 1500s through one of three "claims engines," i.e., sophisticated databases and claims adjudication software. These engines record various data about each benefit claim, including the CPT codes for the services rendered, the provider's network status, the result of the claim, and who was paid, i.e., the provider or Horizon Insured. (*See* Plaintiffs' Ex. 5 (July 18, 2014 Stipulation Concerning Defendants' Claims Data ¶ 4 (identifying data fields))). The claims engines processed a claim to one of three outcomes: (1) pay the claim; (2) deny the claim; or (3) "pend" the claim. If a benefits claim is paid or denied, that is the end of the claims processing; if a claim is "pended," Horizon employees manually review it to resolve any issues, which can include asking the provider to submit supporting documentation. (Plaintiffs' Ex. 6 (Mehroke Dep. 19:16-20:24)).

All Horizon plans covered E/M, PT, and CMT. (Moving Br. 7). However, at some point in the 1990s, Horizon made a decision to start automatically denying all claims for PT and E/M submitted by a chiropractor. (Moving Br. 8). Horizon claims that it started doing this due to the bundling of E/M and PT into the CMT service. Horizon's Explanation of Benefits, however, would state that chiropractors were not a "provider type" eligible for payment for the billing codes designated for PT and E/M. (*See* Plaintiffs' Exs. 11, 13, 14). Moreover, when chiropractors appealed the denials, they were systematically denied without any meaningful review. (*See* Moving Br. 17-21). Plaintiffs have evidence that the systematic denial of their claims for PT and E/M violated the terms of all Provider Agreements and also the terms of all the plans held by Horizon's Insureds. (*See* Moving Br. 7, 20-21).

### B. The Test Plaintiffs

Plaintiffs are three New Jersey chiropractors subjected to Horizon's bundling policy. Dr. DeMaria was a Par provider during the entire Class Period. Dr. Proodian was a Non Par provider during the entire Class Period. Dr. Probe was a Par provider for part of the Class Period (until April 3, 2009) and Non Par for the remainder.

Plaintiffs have brought federal ERISA claims (Counts I-II) and state law claims (Counts III-VI) on behalf of themselves and other chiropractors who were denied E/M and PT benefits under Horizon plans during the Class Period. Count I seeks the recovery of benefits due under ERISA-covered plans pursuant to ERISA § 502 (a)(1)(B), and Count II seeks an order requiring Horizon to provide a "full and fair review" of denied benefit claims under ERISA § 502 (a)(3) and 29 C.F.R. § 2560.503-1(h)(2) (claims procedure). Plaintiffs' ERISA claims allege that Horizon's uniform and automated policy of denying benefits for E/M and PT services violated Horizon plans, which covered those services.

Plaintiffs' non-ERISA claims sound in breach of contract (Count III), breach of the covenant of good faith and fair dealing (Count IV), promissory estoppel (Count V), and unjust enrichment (Count VI). Plaintiffs' non-ERISA claims allege that Horizon's denial of E/M and PT benefits breached various duties Horizon owed under its plans and Provider Agreements. (*See* Opinion of July 31, 2013, ECF No. 31 at 3-4 (summarizing state law claims)).

## II. PROPOSED CLASSES

Plaintiffs seek the certification of two classes, each with sub-classes. The two proposed classes are distinguished by the plan type: ERISA or Non-ERISA. The two subclasses are distinguished by the provider type: Par providers and Non Par providers.

The proposed ERISA Class is defined as:

All chiropractors who, during the Class Period, received payment from Horizon pursuant to an employer benefit plan covered by ERISA for CMT services, but were denied payment for E/M and/or PT services provided on the same date as the CMT service. Excluded from this Class are benefit claims submitted by Non-Participating providers under Horizon's Multi-Plan Liaison ("MPL") Program. This Class has two sub-classes: (1) chiropractors who were, at the time they rendered the

services, participating providers; and (2) chiropractors who were, at the time they rendered the services, non-participating providers.

The proposed Non-ERISA Class is defined as:

All chiropractors who, during the Class Period, received reimbursement from Horizon pursuant to an employer benefit plan not covered by ERISA for CMT services, but were denied reimbursement for E/M and/or PT services provided on the same date as the CMT service. This Class has two sub-classes: (1) chiropractors who were, at the time they rendered the services, Participating providers; and (2) chiropractors who were, at the time they rendered the services, Non-Participating providers.

## III.  LEGAL STANDARD

Class certification is proper if the Court finds that Plaintiffs satisfy all of the requirements of Federal Rule of Civil Procedure 23(a) and one of the provisions of Federal Rule of Civil Procedure 23(b). *See In re Constar Int'l Inc. Sec. Litig.*, 585 F.3d 774, 780 (3d Cir. 2009). Rule 23(a) has four requirements: (1) the class must be so numerous that joinder of all members is impracticable; (2) there must be questions of law or fact common to the class; (3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). These four requirements are referred to, respectively, as numerosity, commonality, typicality, and adequacy.

In addition to satisfying the four requirements of Rule 23(a), Plaintiffs must demonstrate that one of the provisions of Rule 23(b) is met. In this case, Plaintiffs seek certification of the ERISA claims under Rule 23(b)(1) or 23(b)(3) and certification of the non-ERISA claims under Rule 23(b)(3) only. These portions of Rule 23 state that a class action may be maintained if:

(1) prosecuting separate actions by or against individual class members would create a risk of:

   (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

   (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other

members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

. . .

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

In addition to Rule 23's explicit requirements, "courts have grafted on to it two additional criteria, often referred to as the 'implicit requirements' of class certification: that the class be 'definite' or 'ascertainable' and that the class representative be a member of the class." Newberg on Class Actions § 3:1 (5th ed.); *see also Carrera v. Bayer Corp.*, 727 F.3d 300, 306 (3d Cir. 2013) ("Class ascertainability is an essential prerequisite of a class action, at least with respect to actions under Rule 23(b)(3)." (quotation omitted)). Ascertainability means that "the class must be currently and readily ascertainable based on objective criteria." *Marcus v. BMW of North Am., LLC*, 687 F.3d 583, 593 (3d Cir. 2012) (citations omitted). "If class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate." *Id.*

The Third Circuit has noted that "the requirements set out in Rule 23 are not mere pleading rules." *In re Hydrogen Peroxide Antitrust Litigation*, 552 F.3d 305, 316 (3d Cir. 2009). "The party seeking certification bears the burden of establishing each element of Rule 23 by a preponderance of the evidence." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 591 (3d Cir. 2012). "Echoing the Supreme Court," the Third Circuit has repeatedly "emphasized that actual, not presumed, conformance with Rule 23 requirements is essential." *Id.*

To determine whether there is actual conformance with Rule 23, a district court must conduct a "rigorous analysis" of the evidence and arguments put forth. *Id.* When doing so, "the court must resolve all factual or legal disputes relevant to class certification, even if they overlap with the merits — including disputes touching on elements of the cause of action." *Id.* (*citing Hydrogen Peroxide*, 552 F.3d at 307). "Rule 23 gives no license to shy away from making factual findings that are necessary to determine whether the Rule's requirements have been met." *Id.*

The various inquiries in the Rule 23 analysis each have their own unique language and tests, but ultimately, class certification is proper where the class serves the interests of judicial economy and fairness. *See Clark v. Bally's Park Place, Inc.*, 298 F.R.D. 188, 201 (D.N.J. 2014) ("[T]he Court must balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication."); *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 148 (1982). ("[T]he efficiency and economy of litigation . . . is a principal purpose of the [class action] procedure.").

## IV. DISCUSSION

In short, this motion poses a simple, concrete question. Can the Court fairly and efficiently determine whether the bundling policy violated the rights of the proposed classes? Or do the individual inquiries that will be required to ultimately determine what, if any, actual damages each class member gets, pose such an overwhelming problem as to make class certification impractical and unfair? On the evidence produced, the Court can indeed determine, on a class-wide basis, whether the bundling policy violated ERISA or breached all the non-ERISA contracts in this case. However, in order to keep the class manageable, the available relief must be limited to an order that Horizon reprocess the class members' claims.

All claims extend from common evidence. This evidence begins with the definition of "therapeutic manipulation," which was a treatment covered under all Horizon plans. "Therapeutic manipulation" was uniformly defined in all relevant plans as follows:

> **Therapeutic Manipulation** means the treatment of the articulations of the spine and musculoskeletal structures for the purpose of relieving certain abnormal clinical conditions resulting from the impingement upon associated nerves causing discomfort. Some examples are manipulation or adjustment of the spine, hot or cold packs, electrical muscle stimulation, diathermy, skeletal adjustments, massage,

>    adjunctive, ultra-sound, doppler, whirlpool, hydro therapy or other treatment of similar nature.

(Plaintiffs' Ex. 7 (Horizon Basic Plan A/50 excerpts) at 2). Plaintiffs have produced evidence that "therapeutic manipulation" included E/M and PT. (*See* Plaintiffs' Ex. 8 (Dell'Arena Dep. 32:7-33:4; 37:8-38:16; 43:23-44:24)).

It is undisputed that sometime in the 1990s, Horizon decided to implement the subject bundling policy. (Horizon's Ex. 6 (Burns Dep. 38:12-14); Horizon's Ex. 7 (Dell'Arena Dep. 192:25-193:9); Horizon's Ex. 9 (Harris Dep. 22:1-23:7)). It has been stipulated that the bundling policy appeared nowhere in any plan documents. (Plaintiffs' Ex. 2 at ¶ 2(c)). The bundling policy manifested on Explanation of Benefit forms as payment made for CMT but denied for E/M and/or PT when the provider administered CMT along with E/M and/or PT at the same time. (*See* Plaintiffs' Ex. 5 at ¶ 7). Horizon would justify the denial of the relevant E/M and PT claims, uniformly, on the grounds that chiropractors were ineligible to be paid for E/M or PT. (*See* Plaintiffs' Ex. 12 (Vern-Dixon Dep. 107:14-108:16)). The denial of claims and appeals was automatic and systematic. (Plaintiffs' Ex. 10 (Burns Dep. 50:6-51:21); Plaintiffs' Ex. 29 (Hayes Dep. 19:25-21:2)). The denial was unrelated to medical criteria. (Plaintiffs' Ex. 21 (Harris Dep. 79:14-80:7)).

Both the ERISA and breach of contract claims are entirely based on this simple evidence. For the ERISA claims, there are two prongs of alleged liability: (1) denying the claims on the basis that chiropractors were not eligible for reimbursement for E/M and PT is false and therefore in violation of ERISA (Count I); (2) the automatic denial of all appeals violated the "full and fair review" of appeals required by ERISA, 29 U.S.C. § 1133 (Count II). For the contract claims, the allegation is simply that the bundling policy violated Horizon's contractual obligation to make payments for "therapeutic manipulation."

Horizon's defenses to its bundling policy are simple and apply to all allegations that the bundling policy violated ERISA and New Jersey contract law. One defense is that the practice of bundling was "a reasonable practice consistent with Horizon's legal obligations, the chiropractic reimbursement practices of the country's largest payor (The Centers for Medicare and Medicaid Services ("CMS")), and standard industry claims edits applied by insurers beyond Horizon." (Opp. Br. 2). Moreover, Horizon argues that its provider manuals, as early as 1999, informed providers that they could only bill one CPT code per visit and that PT was considered part of CMT. (*See* Opp. Br. 8-10). Also, Horizon argues that chiropractic industry literature supported the bundling of services. (*See* Opp. Br. 10-12*)*. Additionally,

Horizon defends itself against all Par providers with the terms of its "Specialty Provider Agreement" (Plaintiffs' Ex. 9), which stated that Par providers: (1) agreed to be bound by Horizon's final determinations; (2) acknowledged that Horizon would have final authority to determine what counted as a covered service; (3) acknowledged that Horizon had the right to "rebundle and unbundle claims;" and (4) agreed to accept payment "in accordance with reassignment and bundling." (Opp. Br. 5). Horizon defends itself against the Non Par provider class by arguing that the class members should have sought payment from the patients when Horizon denied their claims. (*See* Opp. Br. 15-16).

In sum, the four Rule 23(a) elements have been satisfied. The class has commonality. The members have all "suffered the same injury," *Wal-Mart*, 131 S. Ct. at 2551 – subjection to an improper claims denial practice. The "glue" holding the claims together is the question of whether automatic denial under the bundling policy violated ERISA or New Jersey contract law. *Id.* The "classwide proceedings" will "generate common answers" (i.e. whether the policy did violate ERISA or the terms of the non-ERISA contracts). *Id.* Finally, the common answer is "apt to drive the resolution of the litigation." *Id.* The Plaintiffs' claims are typical of the class members' claims because they align perfectly with the other class members in that the Plaintiffs submitted Form 1500s for CMT, PT, and E/M and were paid for CMT but denied payment for PT and E/M on the grounds that chiropractors were not eligible for E/M and PT claims. The Plaintiffs' claims thus arise "from the same event or practice or course of conduct that gives rise to the claims of the class members" and are "based on the same legal theory." *Baby Neal ex rel. Kanter v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994). There is no serious doubt that the Plaintiffs are adequate class representatives nor that the class is sufficiently numerous.[1]

### A. Rule 12(b)(3) – Predominance

The Third Circuit has stated:

> Under Rule 23(b)(3), "questions of law or fact common to class members [must] predominate over any questions affecting only individual members." This predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). . . . A plaintiff must "demonstrate that the element of [the legal claim] is capable of proof at

---

[1] Horizon has admitted that "[t]he proposed Class numbers more than 50 persons" (Plaintiffs' Ex. 41 (Responses to Requests for Admissions ¶ 23)).

> trial through evidence that is common to the class rather than individual to its members." *Hydrogen Peroxide*, 552 F.3d at 311. "Because the nature of the evidence that will suffice to resolve a question determines whether the question is common or individual, a district court must formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case." *Id.* (quotation marks omitted).

*Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 600 (3d Cir. 2012).

Horizon claims that "individualized issues" predominate over the central question of the bundling policy's legality. While it is true that Horizon's ultimate responsibility on each claim will require individual attention, the fairest and most efficient way for the court to address the class members' claims is to consider the legality of the bundling policy on a class-wide basis and, if illegal, to order reprocessing of the claims. If the Plaintiffs prove their case, Horizon can administratively work through the individualized issues that each claim presents. Further conflicts that survive the reprocessing would be appropriately adjudicated in separate court actions. Below the Court addresses Horizon's "individualized issues" and explains why they do not predominate.

Horizon's first "individualized issue" is the varying language of assignments. It claims that the varying language makes standing for each class member too uncertain for class certification. This argument is not persuasive.

It is not disputed that Horizon's first obligation to pay is to the Horizon Insureds. It is also not disputed that Plaintiffs and class members obtained the right to payment from Horizon via "patient intake forms" that frequently contain highly individualized language about assignment of rights to insurance payments. At first blush, the variation of assignment language makes the class seem untenable. For example, Dr. Proodian used patient intake forms that did not contain assignment language and merely contained directions for endorsing the insurance check to Dr. Proodian's practice. (Opp. Br. 14). Dr. DeMaria used a form stating that patients were "assign[ing] directly to Dr. _____ all insurance benefits, if any, otherwise payable to me for services rendered," (Plaintiffs' Ex. 25 (at AAD_0000014)), and that the assignment 'will end when my current treatment plan is completed or one year from the date signed below." (*Id.*).

But it is also undisputed that no one can be a class member unless he or she submitted a Form 1500 to Horizon. All Form 1500s contained an assignment stating that the patient "authorizes payment of medical benefits to the undersigned physician

or supplier for services described below." (Plaintiffs' Ex. 19). The preponderance of the evidence indicates that Horizon accepted all Form 1500 assignments. (*See* Plaintiffs' Ex. 39 (Hinds Dep. 27:21-30:24); Plaintiffs' Ex. 40 (Naeris Dep. 38:21-39:16); Plaintiffs' Ex. 12 (Vern-Dixon Dep. 53:5-53:25) ("from our standpoint, that's it [checking the box on the 1500].")). The Form 1500 creates a derivative right to sue for payment under both ERISA and New Jersey contract law. *See Premier Health Ctr., P.C. v. UnitedHealth Grp.*, 2014 WL 4271970, at \*12 (D.N.J. Aug. 28, 2014); *Gregory Surgical Servs., LLC v. Horizon Blue Cross Blue Shield of New Jersey, Inc.*, 2007 WL 4570323, at \*4 (D.N.J. Dec. 26, 2007) (*citing County of Morris v. Fauver*, 707 A.2d 958, 969 (N.J. 1998); *Garden State Bldgs., L.P. v. First Fid. Bank, N.A.*, 702 A.2d 1315, 1322 (N.J. Super. Ct. App. Div. 1997)).

Nor is standing undermined by anti-assignment clauses that sometimes appeared in the contracts between Horizon and its Insureds. These clauses frequently stated that patients could assign rights to payment but not rights to sue. (*See* Opp. Br. 18-19). These anti-assignment clauses are null and void as far as the Plaintiffs' right to sue for payment due is concerned. Under New Jersey contract law, a party may waive an anti-assignment provision via a course of dealing that renders the anti-assignment provision inequitable. *See Gregory Surgical Servs., LLC v. Horizon Blue Cross Blue Shield of New Jersey, Inc.*, 2007 WL 4570323, at \*4 (D.N.J. Dec. 26, 2007) (*citing County of Morris v. Fauver*, 707 A.2d 958, 969 (N.J. 1998); *Garden State Bldgs., L.P. v. First Fid. Bank, N.A.*, 702 A.2d 1315, 1322 (N.J. Super. Ct. App. Div. 1997), *cert. denied*, 707 A.2d 153 (N.J. 1998)). It would be patently unfair to allow the patient to assign his rights to payment to a provider but not let the provider sue for breach of the assigned contract for payment. Horizon's making a decision based on a Form 1500 should be read as a waiver of any anti-assignment clause, at least as far as suit for payment on the particular claim goes. The same can be said of the right to sue under ERISA. *See Premier Health Ctr., P.C. v. UnitedHealth Grp.*, 2014 WL 4271970, at \*12 (D.N.J. Aug. 28, 2014) ("Defendants cannot act as though valid assignments [of rights to payment under ERISA-governed plans] exist through course of conduct and then challenge the assignment's very existence in litigation."). Each class member has limited standing to sue by virtue of Horizon paying or denying a claim submitted on a Form 1500.

Horizon also argues that the standing among class members is too uncertain because any provider who did not seek payment directly from Horizon Insureds after Horizon refused to pay the claims has no injury in fact. (Opp. Br. 15-17; 19-20). This argument is not persuasive. No Circuit has ever accepted this argument before. *Spindex Physical Therapy USA Inc. v. United Healthcare of Arizona, Inc.*, 770 F.3d

1282, 1291 (9th Cir. 2014) (*citing HCA Health Services of Georgia*, 240 F.3d 982 (11th Cir. 2001)).

Horizon further argues that the class concerns do not predominate because claims might be denied for reasons other than the bundling policy. Other reasons for denial might include: (1) time limitations present in certain contracts; (2) whether the claim included certain modifiers in the claims, the presence or absence of which could be construed as an admission that the E/M and PT charges were not reimbursable; (3) information in the patients' medical records that may warrant denial of the claim. These possibilities do not dissuade the Court from finding that certifying a class for the remedy of re-processing is the most fair and efficient method of adjudicating the legality of the bundling policy. Any reason for denial other than the bundling policy is subordinate to the question of the bundling policy's legality because the claims were automatically denied under the bundling policy, without any consideration of whether other legitimate reasons for denial might exist. Horizon can still deny any claim for a proper reason during a reprocessing.

Even if liability is established on each claim, the amount of damages due on each claim is uncertain. The sum payable depends upon whether the provider was participating or non-participating, the applicable fee schedule, and the terms of each Horizon Insured's plan. But the need to determine damages on a claim-by-claim basis does not undermine the predominance of the central issue of bundling's legality. *See* Newberg § 4:54 ("[C]ourts in every circuit have uniformly held that the 23(b)(3) predominance requirement is satisfied despite the need to make individualized damage determinations").

Horizon also raises practical payout issues, like whether Horizon or the employer should pay in cases of Horizon ASO plans. This, and all other issues Horizon raises are all subordinate to the central question and would be rightly raised in subsequent litigation.

All the classes can be certified under Rule 12(b)(3) because the issue of the bundling policy's legality, which can be fully redressed with an order to reprocess the claims, predominates over any of the subordinate issues that Horizon raises, individually or collectively. All evidence to prove and defend the legality of the bundling policy is uniform for all class members. *See Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 600 (3d Cir. 2012). A class action is the superior method for dealing with the issue because it will allow one court to determine one time whether the bundling policy was illegal, and if so, order Horizon to do what it would have done in the absence of the illegal policy.

### B. Rule 23(b)(1)(B)

The ERISA classes can also be certified under Rule 23(b)(1)(B) because the result for the judgment on the legality of the bundling policy for the named Plaintiffs in this case would have the effect of determining the legality of the bundling policy for all proposed class members. Thus if the Court rules in Horizon's favor on the issue of the bundling policy, it is likely to have the effect of pre-ordaining a negative outcome on causes of action that members of the proposed class could make on their own in the absence of class certification here. *See* 7AA Wright et al., *supra,* § 1774 (citation omitted).

### C. Ascertainability Requirement

Finally, the class is ascertainable because the parties stipulated that Horizon can readily determine, from claims data, instances when Defendants (1) paid claims submitted by chiropractors for CMT services, but (2) denied claims submitted by chiropractors for E/M and PT services performed on the same day as the paid CMT service. (Plaintiffs' Ex. 5 ¶ 7).

### V. CONCLUSION

For the reasons set forth below, the Plaintiffs' Motion to Certify a Class is GRANTED, with class-wide relief limited to a reprocessing of the claims. An appropriate order follows.

/s/ William J. Martini
_____
**WILLIAM J. MARTINI, U.S.D.J.**

**Date:  June 1, 2015**