## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ALPHONSE A. DEMARIA, et al.**, on their own behalf and on behalf of certified classes,<br><br>**Plaintiff,**<br><br>v.<br><br>**HORIZON HEALTHCARE SERVICES, INC. d/b/a HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY, et al.**,<br><br>**Defendants.** | Civ. No. 2:11-cv-07298 (WJM)<br><br><br>**OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

This class action lawsuit alleges that Horizon wrongfully denied medical insurance claims for chiropractic services provided by Plaintiffs to patients enrolled in Horizon insurance programs. The Court preliminarily approved the Settlement on June 20, 2016. Plaintiffs now move to finalize the Settlement and to grant attorneys' fees. For the reasons below, the motions are **GRANTED**. Requests for reimbursement of litigation costs and for service awards to Class Representatives are also **GRANTED**.

## I. BACKGROUND

The facts giving rising to this litigation are described in detail in the Court's June 1, 2015 Opinion granting class certification. Plaintiffs, roughly 9,500 New Jersey chiropractors who provided services for Defendants' subscribers, allege that Defendants automatically denied payment for certain types of services by "bundling" payments for all types of chiropractic treatments into a single fee.

In October 2009, the New Jersey Department of Banking and Insurance ("DOBI") determined that Horizon's bundling practice violated New Jersey's

1

Unfair Claim Settlement Practices Act, N.J.S.A. 17B:30-13.1. The DOBI issued a cease-and-desist order effective April 15, 2010. Plaintiffs seek relief for Horizon's denial of E/M and PT claims that they filed before the DOBI's April 15, 2010 cease-and-desist order.

Plaintiffs filed their Complaint before this Court on December 16, 2011. On June 1, 2015, the Court granted class certification pursuant to Federal Rule of Civil Procedure 23. The Court appointed Plaintiffs as Class Representatives and appointed Buttaci Leardi & Werner LLC and Zuckerman Spaeder LLP as Class counsel pursuant to Fed. R. Civ. P. 23(g)(1). The Court limited class-wide relief to the reprocessing of the denied claims. The Third Circuit denied Defendants' Rule 23(f) petition on August 20, 2015.

The parties engaged in settlement negotiations for nearly two years, beginning in August 2014 and culminating on May 6, 2016 in a signed settlement agreement (the "Agreement" or "Settlement"). During this process, Magistrate Judge Falk led in-person mediations in October 2015 and April 2016. The Agreement creates a Settlement Fund of $33 million to be distributed, after payment of attorneys' fees and service awards, among Class Members in amounts corresponding to their respective shares of the denied claims.

The Court granted Plaintiffs' unopposed Motion for Preliminary Approval of Class Action Settlement on June 20, 2016, finding that the Settlement contains no obvious deficiencies, falls within the range of reason, and is fair, reasonable, and adequate under Federal Rule of Civil Procedure 23(e). The Court also approved the content and form of the Mailed Notice, Long Form Notice, and Publication Notice. Plaintiffs retained Epiq Class Action & Claims Solutions, Inc. to serve as Settlement Administrator. Class members were given a 75-day period in which to file written objections or request to be excluded (or "opt out").

On September 1, 2016, Plaintiffs filed an unopposed Motion for Final Approval of Class Action Settlement, and also moved for the Court to grant attorneys' fees and service awards. Plaintiffs request that counsel be awarded 33.33% of the settlement amount, or $11,000,000, in addition to $91,055.47 in expenses incurred during litigation. Plaintiffs request an award of $45,000 for each of the three Class Representatives, for a total service award of $135,000 (equal to 1.2% of the settlement amount).

According to Plaintiffs' supplementary memorandum filed on October 6, 2016, none of the roughly 9,500 class members objected to the Settlement or to the

Class counsel's Fee Request. Two Class members opted out; their unpaid claims of $2,555.00 represent only 0.0028% of the unpaid claims to be paid from the Settlement. *See* Peters Decl. ¶ 5. A Fairness Hearing was conducted October 13, 2016.

## II.   DISCUSSION

### A. FAIRNESS OF THE PROPOSED SETTLEMENT

#### (a) Application of the *Girsh* Factors

To approve a class action settlement, a court must conduct a hearing and find that the agreement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The Third Circuit's decision in *Girsh v. Jepson* articulates nine factors to be considered by courts to evaluate the fairness of a settlement proposal, *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975):

> "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation."

*Girsh*, 521 F.2d at 157. The Court examines each factor below and finds the Settlement to be reasonable.

#### 1. Complexity and duration of the litigation

The first factor is "intended to capture 'the probable costs, in both time and money, of continued litigation," in order to "gauge the benefit of settling the claim amicably." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535-36 (3d Cir. 2004). The parties have litigated this action through several motion cycles over the span of almost five years. Further litigation risks additional discovery and motions, which will demand significant resources of both parties as well as the Court. Pursuant to this Court's order granting class certification, the only remedy available to Class members would be reprocessing over one million claims

submitted by the 9,500 Class members. This factor weighs in favor of approving the Settlement.

### 2.  Reaction of the Class to the Settlement

The second factor attempts to gauge whether members of the Class support the settlement. Here, this factor strongly favors approval, as only two out of more than 9,500 Class members opted out of the Settlement, and no members objected to the Settlement. *Cf. Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118-19 (3d Cir. 1990) (finding that 29 objectors out of 281 class members "strongly favors settlement"). The Court notes as well the enthusiastic reaction of the Association of New Jersey Chiropractors in support of the Settlement. Leardi Decl. ¶ 46.

### 3.  The stage of the proceedings and amount discovery completed

The third factor under *Girsh* calls for examining whether counsel had "adequate appreciation of the merits of the case before negotiating." *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.* ("*G.M. Trucks*"), 55 F.3d 768, 813 (3d Cir. 1995). Counsel in this case have engaged in extensive discovery, both in connection with pre-litigation state agency proceedings and class certification proceedings before this Court. They were well-acquainted with all relevant facts. The third factor thus favors approval.

### 4.  Risks of establishing liability and damages

Pursuant to the Court's Order of June 1, 2015, Plaintiffs' class-wide relief is limited to reprocessing of the wrongfully denied claims. Were the litigation to proceed to trial, Horizon would likely invoke a number of legal defenses to liability. Pl. Memo. 15. This factors favors approval of the Settlement.

### 5.  Risks of maintaining the class action through trial

Rule 23 authorizes district courts to decertify or modify a class at any time during litigation. *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 321 (3d Cir. 1998). Horizon has continuously objected to certification before this Court and has carried those objections on appeal to the Third Circuit. This factor weighs, if at all, in favor of approving the Settlement.

### 6.  The ability of the defendants to withstand a greater judgment

This factor does not weigh for or against approval of the Settlement. Defendants are large corporations whose capacity to withstand judgment has not

been in question. *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 538 (3d Cir. 2004)("[The] fact that [Defendant] could afford to pay more does not mean that it is obligated to pay any more than what the . . . class members are entitled to under the theories of liability that existed at the time the settlement was reached"); *In re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig.*, 269 F.R.D. 468, 489 (E.D. Pa. 2010)("[B]ecause ability to pay was not at issue in the settlement negotiations, this factor is neutral").

### 7. The range of reasonableness of the settlement in light of the best possible recovery and the attendant risks of litigation.

To assess whether a proposed settlement is reasonable, the Court compares "the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing . . . with the amount of the proposed settlement." *G.M. Trucks*, 55 F.3d at 806. The Settlement is reasonable in light of the best possible recovery and the attendant risks of further litigation. *Warfarin*, 391 F.3d at 538.

Based on examination of the Claim Data, Class counsel estimate that Horizon wrongfully denied $92 million in chiropractic fees. Historically, Horizon has paid 47% of chiropractic fees. Leardi ¶ 43. These figures suggest that Plaintiffs would recover $43 million in reprocessed claims were they to succeed at trial. *Id.* The proposed Settlement of $33 million captures roughly 77% of this potential recovery. This estimation assumes that all Class members could readily produce the documentation of claims (some dating back eleven years) that Horizon would require for reprocessing. Further, the attendant risks of litigation are considerable; Horizon could raise a number of potential defenses to avoid liability. Under these circumstances, the Court finds the Settlement to be reasonable.

### Conclusion

For the reasons above, the *Girsh* factors counsel in favor of approving the Settlement.

### (b) Adequacy of Class Notice

Federal Rule of Civil Procedure 23(e) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e). *See also In re Prudential*, 148 F.3d at 327 (explaining that Rule 23(e) notice is designed to summarize the litigation and settlement and to inform class members of the right to inspect the settlement materials and other documents filed during litigation).

Plaintiffs have satisfied the Rule 23(e) notice requirement by following the procedures directed by the Court's June 20th, 2016 order granting preliminary approval of the Settlement. ECF 89, ¶ 4. The Mail Notice, Publication Notice, and Long Form Notice have been properly disseminated using those procedures. Thompson Decl. ¶¶ 4-14.

## B. ATTORNEYS' FEES AND CLASS REPRESENTATIVE INCENTIVE PAYMENTS

Class counsel has submitted pursuant to Fed. R. Civ. P. 23(h) and 54(d)(2) an uncontested motion for attorneys' fees in the amount of $11 million, representing 33.33% of the proposed Settlement Fund. The motion also requests $91,055.47 for counsels' out-of-pocket litigation expenses and $45,000 as service awards to each of the three Class Representatives, to be drawn from the Settlement Fund.

Where a settlement takes the form of a common fund, courts in the Third Circuit generally evaluate attorneys' fees as a percentage of the settlement amount. *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005), as amended (Feb. 25, 2005) (citing *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 333 (3d Cir. 1998)). "In addition to the percentage-of-recovery approach . . . it is 'sensible' for district courts to 'cross-check' the percentage fee award against the 'lodestar' method." *Id.* The Court applies the *Gunter* factors and lodestar cross-check below. For the reasons below, the Court finds the attorneys' fees and costs and the service awards to be reasonable.

### (a) Class Counsel's Fee Request Is Appropriate Under *Gunter*

As part of its assessment of the proposed fees, the Court applies the "*Gunter* factors." *See Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n. 1 (3d Cir. 2000):

> "(1) The size of the fund and number of persons benefitted; (2) the presence or absence of substantial objections by class members to the fee amount; (3) the skill and efficiency of counsel; (4) the complexity and duration of the action; (5) the risk of nonpayment; (6) the amount of time that counsel spent on the case; and (7) awards in similar cases."

*Id.* First, although $33 million is a large settlement, it is not so large as to require deviation from the standard percentage-of-recovery analysis. *See In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 736-37 n. 19 (3d Cir. 2001) (noting that "$100

million seems to be the informal marker of a 'very large' settlement" in percentage-of-recovery cases). Second, no Class members have objected to the requested attorneys' fees. Third, the Class has been represented by highly qualified counsel, who prevailed on several critical motions, including class certification. Fourth, this litigation has stretched almost five years and has involved a number of complex legal issues. Fifth, counsel's contingency fee arrangement and the prospect of failing to establish liability created a substantial risk that counsel would not be compensated. Sixth, counsel dedicated more than four thousand hours to this litigation, a substantial investment of time and resources for attorneys who do not belong to large firms and who normally use hourly fee arrangements. Leardi Decl. ¶¶ 48-50. Finally, a contingency fee of 33.33% is fairly standard for the size of the Settlement and the type of lawsuit. *See In re Schering-Plough Corp. Enhance ERISA Litig.*, No. CIV.A. 08-1432 DMC, 2012 WL 1964451, at *8 (D.N.J. May 31, 2012) (noting that awards between nineteen and forty-five percent are common in ERISA cases).

### (b) Lodestar Crosscheck

Courts often rely on the lodestar method to confirm the reasonableness of percentage-of-recovery fees. *See Rite Aid*, 396 F.3d at 305-06. This method requires the Court to calculate the "lodestar multiplier" by dividing the proposed fee by the amount the attorneys would have reasonably charged using an hourly rate. *See In re Merck & Co., Inc. Vytorin ERISA Litig.*, No. 08-cv-285(dmc), 2010 WL 547613, at *12 (D.N.J. Feb. 9, 2010). "[T]he lodestar multiplier need not fall within any predefined range, provided that the District Court's analysis justifies the award."' *Id.* (citations omitted).

Here, counsel spent 4,153 hours working on this case through July 2016. Leardi Decl. ¶¶ 48-50. Using their standard hourly fees, counsel could have charged approximately $2,522,544.22 (total lodestar amount).[1] Leardi Decl. ¶ 53; Thrasher Decl. 13. The proposed fee of $11 million yields a lodestar multiplier of 4.3.

Although a lodestar multiplier of 4.3 is large, it is not unreasonable. Courts in the Third Circuit have approved lodestar multipliers at least as high as 6.96. *See In re Rite Aid Corp. Sec. Litig.*, 362 F.Supp.2d 587, 590 (E.D. Pa. 2005). A multiplier of 4.3 is consistent with the considerable risks that counsel faced in taking on this litigation, and the sophisticated legal work required to achieve

---

[1] The Court finds that the hours spent on litigation and the billing rates charged by each attorney are reasonable.

success. *See In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 135 (D.N.J. 2002) (high risk of nonpayment justified lodestar of 4.3 for attorneys' fees totaling $42 million).

The Court also finds that reimbursement of $91,055.47 for out-of-pocket litigation costs is reasonable. *See In re Schering-Plough Corp. Enhance ERISA Litig.*, No. CIV.A. 08-1432 DMC, 2012 WL 1964451, at *8 (D.N.J. May 31, 2012); *In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 108 (D.N.J. 2001) ("Counsel for a class action is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action.").

### (c) Class Representative Incentive Payments

The Settlement provides for service awards of $45,000 to be paid to each of the three Class Representatives. "Courts have ample authority to award incentive or 'service' payments to particular class members where the individual provided a benefit to the class or incurred risks during the course of litigation." *Bredbenner v. Liberty Travel, Inc.*, No. 09-1248, 2011 U.S. Dist. LEXIS 38663, at *64-65 (D.N.J. Apr. 8, 2011). The Class Representatives in this case invested significant time to assist counsel during the course of discovery and settlement negotiations. Accordingly, the Court approves service awards of $45,000 for each of the three Class Representatives.

## III.   CONCLUSION

For the foregoing reasons, the Settlement is **APPROVED** and Plaintiffs' Motion for Attorneys' Fees is **GRANTED**. Appropriate Orders accompany this Opinion.

_____/s/ William J. Martini_____
**WILLIAM J. MARTINI, U.S.D.J.**

**October 18, 2016**